968 P.2d 647

**Charlene WILSON, Respondent–Appellant,**

v.

**AIG HAWAII INSURANCE COMPANY, a Hawaii corporation, Petitioner–Appellee.**

No. 20349.

Supreme Court of Hawai'i.

Oct. 28, 1998.

Katharine M. Nohr, on the briefs, Honolulu, for defendant-appellee AIG Hawaii Insurance Company, Inc.

J. Patrick Gallagher (Wayne S. Sakamoto, Joelle Segawa Kane, Leonard R. Gouveia, Jr., and Ryan K. Harimoto of Gallagher & Sakamoto with him on the brief) for Amicus

Curiae Government Employees Insurance Company aka GEICO.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

We granted Defendant–Appellee AIG Hawaii Insurance Company Inc.'s (AIG) petition for writ of certiorari to review the decision of the Intermediate Court of Appeals (ICA) in *Wilson v. AIG Hawaii Insurance Co. Inc.,* No. 20349 (App. Oct. 16, 1997). AIG argues that the ICA erred in vacating the district court's order and judgment granting AIG's motion for summary judgment. Specifically, AIG contends that plaintiff-appellant Charlene Wilson was not a real party in interest and lacked standing to pursue a claim against AIG seeking relief on behalf of her provider for AIG's nonpayment of no-fault benefits.[1]

For the reasons discussed below, we reverse the ICA's opinion and affirm the district court's order granting AIG summary judgment. We also, pursuant to Rule 2(a) of the Rules of the ICA, direct that an order depublishing the ICA's opinion be filed concurrently with this opinion.

## I. BACKGROUND

The facts of this case are undisputed. Wilson was injured on April 14, 1995, while she was a passenger in a vehicle insured under a no-fault insurance policy issued by AIG. Wilson, subsequently, sought treatment from Bernard Robinson, M.D., who diagnosed her as suffering from a herniated disc and recommended surgery.

On July 12, 1995, Dr. Robinson submitted a treatment plan to AIG, dated June 26, 1995, requesting approval for a microdiscectomy. Dr. Robinson performed the surgery on June 30, 1995, and sent AIG a bill for approximately $20,000.

AIG submitted a challenge to peer review on July 19, 1995, pursuant to Hawai'i Revised

---

1. In support of AIG's position, Government Employees Insurance Company (GEICO) submitted an *amicus curiae* brief.

Statutes (HRS) § 431:10C–308.6(d) (1993).[2] AIG questioned whether Dr. Robinson could have treated Wilson more conservatively without surgery. W. James Evans, M.D., prepared the Peer Review Organization (PRO) report concluding that Dr. Robinson's treatment and services were neither appropriate nor reasonable. Consequently, AIG denied Dr. Robinson's request for surgery and treatment.

On September 27, 1995, Wilson filed suit in the District Court of the First Circuit, claiming, *inter alia,* that AIG breached its statutory duty to pay no-fault benefits for injuries Wilson sustained as a result of the motor vehicle accident. Wilson further requested that the court award her "[s]pecial damages, including no-fault benefits," and reasonable attorney's fees, costs, and interest.

On July 31, 1996, AIG moved for summary judgment on the grounds that: (1) Wilson lacked standing to pursue a cause of action to enforce the payment of medical bills to her provider; and (2) the controversy was moot because there was no effective remedy available to Wilson because she bore no liability for the payment of Dr. Robinson's services. AIG relied on HRS Chapter 431:10C (entitled "Hawai'i Motor Vehicle Insurance Law") to support its contention. In particular, AIG cited HRS §§ 431:10C–308.5(e) and 431:10C–308.6(j) (1993),[3] which prohibits a provider from collecting payment of medical services from an insured.

Wilson responded that HRS § 431:10C–308.6(f) (1993) expressly and clearly provides that "[a]ny insured or provider may . . . seek an administrative hearing, arbitration, or *court review* of a denial of no-fault benefits based, in whole or in part, upon a peer review organization determination." (Emphasis added). According to Wilson, the statute "automatically" granted her standing to sue without having to show actual injury.

In the alternative, Wilson contended that she was a real party in interest because she was entitled to enforce her contractual right to no-fault benefits under Hawaii's Motor Vehicle Insurance Law.

The district court held a hearing on the motion on September 23, 1996, wherein the court orally granted AIG's motion for summary judgment, ruling as follows:

> The Court understands that under [HRS § 431:10C–308.6(f) ] . . ., it does state any insured or provider, but in reading the other decision in conjunction with the no-fault statute, I cannot read that particular cause of standing in a capsule. I cannot read it without taking into consideration the full effect of the no-fault statute.
>
> And when you read the entire statute in total, it does remove the insured from the process of being subject to any kind of liability for payment, or being able to pursue a claim for payment.
>
> . . . .
>
> And because of the fact that the insured had received the relief that the nofault statute intended for them to receive, there wouldn't be any further relief remaining. So, even if we proceeded to trial, there's nothing else that I can grant.

On October 17, 1996, the district court entered its written order granting AIG's motion for summary judgment. The court filed its final judgment on November 21, 1996.

On appeal, the ICA, in a published opinion, vacated the district court's order granting AIG's motion for summary judgment and subsequent final judgment. The ICA concluded that "[Wilson] [wa]s a real party in interest and ha[d] standing to seek a monetary judgment in favor of [Dr. Robinson] and against [AIG] in the amount of [Dr. Robinson's] bill for past services[.]" *Wilson,* slip

---

2. HRS § 431:10C–308.6(d) provides:
   (d) A provider may request prior approval from the insurer for treatment exceeding the workers' compensation schedules or treatment guidelines. The request shall include a treatment plan with a time schedule of measurable objectives and an estimate of the total cost of services. The insurer shall respond to such a request within five working days of mailing the request, giving authorization or

stating in writing the reasons for refusal to the provider and the insured. Any such refusal shall be filed concurrently for submission to the peer review organization. Failure by the insurer to respond within five working days shall constitute approval of the treatment.

3. *See infra,* discussion part III.

op. at 11. The ICA reasoned that the Hawai'i Motor Vehicle Insurance Law expressly conferred on Wilson the status of a real party in interest and standing because she "ha[d] a continuing personal interest in causing the insurer to pay the insured's provider" and in seeking to improve her chances of qualifying to sue in tort. *Id.* slip op. at 13–14. Accordingly, the ICA remanded the case for further proceedings. *Id.* slip op. at 14–15.

AIG filed a timely petition for writ of certiorari, which we granted on November 20, 1997.

## II. *STANDARDS OF REVIEW*

### A. *Summary Judgment*

We review a circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> *Id.* (citations and internal quotations omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716, (1982) (citations omitted).

*Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997) (quoting *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997)) (brackets omitted). "[W]e must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Morinoue,* 86 Hawai'i at 80,

947 P.2d at 948 (quoting *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)) (brackets omitted).

### B. *Statutory Construction*

"The interpretation of a statute is a question of law reviewable *de novo.*" *Franks v. City & County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993).

> The starting point in statutory construction is to determine the legislative intent for the language of the statute itself. Our foremost obligation when interpreting a statute is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. We read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*Mendes v. Hawai'i Ins. Guar. Ass'n,* 87 Hawai'i 14, 17, 950 P.2d 1214, 1217 (1998) (internal citations, quotation marks, and brackets omitted).

## III. *DISCUSSION*

In concluding that Wilson could seek a monetary judgment on behalf of Dr. Robinson for payment of past medical services, the ICA relied upon the concepts of "standing" and "real party in interest." The ICA recognized that "[t]he difference between having 'standing' and being a 'real party in interest' is often confused." *Wilson,* slip op. at 9. These distinctions were previously analyzed in *Lagondino v. Maldonado,* 7 Haw.App. 591, 789 P.2d 1129, *cert. denied,* 71 Haw. 668, 833 P.2d 900 (1990).

In *Lagondino, supra,* a general contractor sued a homeowner for payment under a construction contract. *Id.* The circuit court dismissed the suit on the ground that the contractor lacked standing to sue for payment under the contract because the contractor had assigned all his rights under the contract to a performance bondholder. *Id.* at 594, 789 P.2d at 1131. On appeal, the ICA acknowledged the difference between "standing" and a "real party in interest," and stated:

> We note that the [defendants] advance the concept of 'standing' in their objection to [plaintiff] maintaining the action. In our

view their objection should be that [plaintiff] is not a 'real party in interest' under [Hawai'i Rules of Civil Procedure (HRCP)] Rule 17(a). The courts utilize standing doctrines to refrain from determining the merits of a legal claim 'on the ground that even though that claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination.' 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3531 at 338–39 (1984). *See also Bank of Hawai'i v. Horwoth,* 71 Haw. 204, 214, 787 P.2d 674, 680 (1990); *Life of the Land v. Land Use Comm'n,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981). On the other hand, the real party in interest concept under Rule 17(a) 'is a means to identify the person who possess the right sought to be enforced.' 6A C. Wright, A. Miller & M. Kane [Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane], *Federal Practice and Procedure: Civil 2d* § 1542 at 327 (1990) (footnote omitted).

*Id.* at 595, 789 P.2d at 1132.

Relying on these principles, our inquiry in this case is not based on Wilson's "standing," but rather on whether Wilson is a "real party in interest," pursuant to DCRCP Rule 17(a), which provides in relevant part:

> **(a) Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest; except that (1) ... a party authorized by statute may sue in such party's own name without joining with such party the party whose benefit the action is brought[.]

According to the ICA, DCRCP Rule 17(a) "makes it clear that a person qualifies under subdivision (a) as a real party in interest when a statute gives him the right to bring suit." *Id.* slip op. at 10 (citing 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d.* § 1550 at 384 (1990)) (hereinafter Wright, Miller & Kane). Furthermore, to qualify as a "real party in interest," a party must also have a legal right under substantive law to enforce the claim in question. *See Wilson,* slip op. at 10 ("DCRCP Rule 17(a)'s 'real party in interest' requirement mandates 'that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right.' ") (quoting 6A Wright, Miller & Kane § 1543 at 334–37). *See also* 6A Wright, Miller & Kane § 1544 at 340 ("To determine whether the requirement that the action be brought by the real party in interest has been satisfied, the court must look to the substantive law creating the right being sued to see if the action has been instituted by the party possessing the substantive right to relief.").

In the instant case, we acknowledge that HRS § 431:10C308.6(f) expressly allows "any insured" the right to seek court review of a PRO's denial of no-fault benefits. The question thus becomes whether the substantive law permits Wilson to enforce her claim against AIG. Here, Wilson admits that she is "effectively bringing the action for the benefit of her primary treating physician." The ICA further characterizes Wilson's claim as "seek[ing] a judgment in favor of [Dr. Robinson] and against [AIG] in the amount of [Dr. Robinson's] bill for past services[.]" *Wilson* slip op. at 8–9. As expressed, Wilson's claim is not a claim for relief that she is entitled to enforce against AIG.

Under HRS § 431:10C–304(1)(A) (1993), the only benefit an insurer shall pay to "[a]ny person including the owner, operator, occupant, or user of the insured motor vehicle; [a]ny pedestrian (including a bicyclist); or [a]ny user or operator of a moped ... [,]" is "an amount equal to the no-fault benefits payable for wage loss and other expenses to that person under section 431:10C–103(10)(A)(iii) and (iv) as a result of the injury[.]" HRS § 431:10C–103(10)(A)(iii) and (iv) (1993) lists the eligible no-fault benefits as follows:

> (A) No-fault benefits, sometimes referred to as personal injury protection benefits, with respect to accidental harm means:
>
> . . .
>
> (iii) Monthly earnings loss measured by an amount equal to the lesser of:
>
> (I) $1,200 a month; or
>
> (II) The monthly earnings for the period during which the accidental harm results

in the inability to engage in available and appropriate gainful activity;

(iv) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to:

(I) Expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of the person or the person's family up to $800 a month;

(II) Funeral expenses not to exceed $1,500; and

(III) Attorney's fees and costs to the extent provided in section 431:10C–211(a)[.]

With regard to payment of the insured's medical expenses, HRS § 431:10C–304(1)(B) (1993) specifically requires the insurer to pay the medical expenses *directly* to a provider:

(B) In the case of injury arising out ·of a motor vehicle accident, the insurer shall pay, without regard to fault to a provider of services· on behalf of the persons listed in subparagraph (A), charges for services covered under section 431:10C–103(10)(A)(i) and (ii)[.]

HRS § 431:10C–103(10)(A)(i) and (ii) (1993) lists these services as follows:

(i) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional, nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, and x-ray. The foregoing expenses may include any nonmedical remedial care and treatment rendered in accordance with the teachings, faith, or belief of any group which depends for healing upon spiritual means through prayer;

(ii) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation[.]

A plain reading of HRS § 431:10C–304(1) reveals that an insurer is only obligated to

make direct payment to the insured for wage loss, expenses incurred as a result of accidental harm, funeral services, and attorney's fees and costs. *See* HRS §§ 431:10C–304(1)(A) and 431:10C–103(10)(A)(iii) and (iv). The statute does not confer upon the insured the right to receive payment of medical benefits on behalf of his or her provider. In fact, the statute designates billing/payment of medical expenses to flow directly from the insurer to the provider. *See* HRS § 431:10C–304(1)(B). Therefore, as a matter of law, the insured plays no role in the billing/payment process for medical services. Any dispute relating to the payment of medical services is strictly between the insurer and the provider.

This view is further reinforced by HRS §§ 431:10C–308.5(e), wherein the provider is prohibited from collecting payment for medical services rendered by the provider directly from the insured:

The provider of services described in Section 431:10C–103(10)(A)(i) and (ii) shall not bill the insured directly for those services but shall bill the insurer for determination of the amount payable. The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.

HRS § 431:10C–308.6(j) also prevents the provider from collecting for services a PRO has determined to be inappropriate and unreasonable:

If a peer review organization determines that a provider has provided treatment or rehabilitative services that are not appropriate or reasonable or that future provision of such treatment or rehabilitative services will not be appropriate or reasonable, or both, *the providers shall not collect payment for the inappropriate or unreasonable treatment or rehabilitative services from either the insurer or the insured.*

(Emphasis added.).

Viewing these statutes *in pari materia, see* HRS § 1–16 (1993),[4] it is clear that the

---

4. HRS § 1–16 provides:

Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.

no-fault law does not allow an insured to enforce a claim for unpaid medical expenses against an insurer on behalf of his or her provider. The no-fault statutory scheme strongly suggests that the provider, not the insured, is entitled to pursue payment from the insurer for the cost of unreimbursed medical services to the insured. Accordingly, we hold that Wilson is not a real party in interest with respect to her claim against AIG for no-fault benefits to satisfy her provider's unpaid bill.

The ICA, nevertheless, concluded that Wilson was a real party in interest for the following reasons. First, in the ICA's view, "the insured has a continuing personal interest in causing the insurer to pay the insured's provider." *Wilson*, slip op. at 13. According to the ICA, "[t]he PRO's decision that the past treatment and/or services were inappropriate and unreasonable may not be the end of the insured's relationship with the provider. The insured may want the provider to continue treatment and/or services to the insured and to be motivated to provide the best treatment and/or services possible." *Id.* The ICA further stated that "[n]onpayment to the provider of all or some of the provider's bill for past treatment and/or services would tend to inhibit the insured's realization of these legitimate decisions." *Id.*

The concern outlined by the ICA that "the [no-fault] insured has a continuing personal interest in causing the insurer to pay the insured's provider" simply does not provide an adequate basis to confer "real party in interest" status on a no-fault insured who has received unreimbursed medical services. *Id.* Although an insured may have a "personal interest" in payment of past medical services to his or her provider, the law does not view this interest as a legally cognizable interest. As discussed above, the no-fault laws completely insulate an insured from the billing/payment process. Therefore, the altruistic concern for the preservation of the integrity of the therapeutic relationship between physician and patient does not supply the statutory basis to permit an insured to assist an unpaid provider in collecting payment for medical expenses.

The ICA's second reason for concluding that Wilson is a real party in interest is based on the ICA's conclusion that the PRO's denial of no-fault benefits "may jeopardize an insured's right to assert tort liability." *Id.* at 14. We agree with the ICA that an insured may be a real party in interest with respect to protecting his or her ability to sue in tort, which, in turn, is dependent upon the insured reaching the tort threshold.

Under HRS § 431:10C–306(b)(2) (1993), tort liability is not abolished when,

[i]njury occurs to such person in a motor vehicle tort accident in which the *amount paid or accrued* exceeds the medical rehabilitative limit established in section 431:10C–308 for expenses provided in section 431:10C–103(10)(A) and (B); provided that the expenses paid shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit[.]

(Emphasis added.). By definition, all expenses listed in HRS § 431:10C–103(10)(A) and (B) must be "appropriate and reasonable." When a PRO disallows expenses on the basis that they are unreasonable and unnecessary, the value of medical expenses denied cannot be included as an "amount paid or accrued" for the purposes of establishing the tort threshold. *See Ho v. Leftwich*, 88 Hawai'i 251, 259, 965 P.2d 793, 801 (1998) (ruling that for purposes of satisfying the threshold requirement, "a plaintiff must prove that any *unpaid* medical expenses incurred within the context of a motor vehicle accident were reasonable and necessary."). As a consequence, the PRO's denial may jeopardize an insured's ability to pursue a tort claim. To sustain this right, HRS § 431:10C–308.6(f) provides an insured a mechanism to seek judicial relief to preserve his or her potential tort claim. Therefore, *if* Wilson had challenged the PRO's decision as to the reasonableness of the medical expenses for purposes of reaching the tort threshold, she would be the real party in interest with respect to that claim.

In this case, Wilson's admitted purpose in filing her lawsuit was to recover no-fault benefits against AIG on behalf of Dr. Robinson. Wilson has not claimed that she filed suit to preserve a potential tort claim. Ac-

cordingly, although the ICA's tort threshold rationale may provide the basis for a claim that another plaintiff may pursue, it is not a claim articulated by Wilson and cannot accord her the status of a real party in interest. Because Wilson is not a real part in interest with respect to the claim she has advanced in this case, we thus reject the ICA's reasons in support of its conclusion.

## IV.  CONCLUSION

For the foregoing reasons, we reverse the ICA's opinion; affirm the district court's order granting AIG's motion for summary judgment; and order the ICA's opinion depublished.