120 P.3d 1128

**In the Matter of the Claim of Flor
DACANAY, Claimant/Appellee–
Appellee,**

v.

**LIBERTY MUTUAL INSURANCE CO.,
Respondent/Appellant–Appellant,**

and

**J.P. Schmidt, Insurance Commissioner,
Appellee–Appellee.**

No. 25424.

Intermediate Court of Appeals of Hawai'i.

Feb. 9, 2005.

Certiorari Dismissed Sept. 2, 2005.

James H. Monma and Anthony L. Wong
(Matsui Chung Sumida & Tsuchiyama, of
counsel), Honolulu, on the briefs, for respon-
dent/appellant-appellant.

T.J. Lane, on the briefs, for claimant/ap-
pellee-appellee.

Deborah Day Emerson and David A. Web-
ber, deputy attorneys general, State of Ha-
wai'i, on the briefs, for appellee-appellee.

WATANABE, Acting C.J., and LIM, J.;
and FOLEY, J., dissenting.

Opinion of the Court by WATANABE,
Acting C.J.

This secondary appeal by Respondent/Ap-
pellant–Appellant Liberty Mutual Insurance
Co. (Liberty Mutual) stems from an admin-
istrative proceeding initiated by Claim-
ant/Appellee–Appellee Flor Dacanay (Daca-
nay) before Appellee–Appellee Insurance
Commissioner for the State of Hawai'i (the
Commissioner),[1] challenging Liberty Mutu-

---

**1.** The Final Order was entered on April 2, 2002
by Wayne C. Metcalf, III, who at the time was
the Insurance Commissioner for the State of
Hawai'i, Appellee–Appellee in this appeal. Pur-

al's refusal to pay several claims for personal injury protection (PIP) benefits submitted by health care providers who had treated Dacanay following an automobile accident. Liberty Mutual settled these claims, and on April 2, 2002, the Commissioner entered a Final Order awarding Dacanay $930.15 in attorney's fees and costs (the Commissioner's Final Order). Liberty Mutual appealed to the Circuit Court of the First Circuit (the circuit court). On October 7, 2002, the circuit court[2] entered a Judgment in favor of Dacanay and the Commissioner and dismissed Liberty Mutual's appeal. This timely appeal[3] followed.

Liberty Mutual argues that: (1) in light of *Wilson v. AIG Hawaii Ins. Co.*, 89 Hawai'i 45, 968 P.2d 647 (1998), and *Gamata v. Allstate Ins. Co.*, 90 Hawai'i 213, 978 P.2d 179 (App.1999), Dacanay is not a real party in interest entitled to prosecute a claim for payment of the contested PIP benefits; and, therefore, (2) Dacanay is not entitled to an award of attorney's fees and costs for prosecuting such a claim.

We conclude that: (1) Liberty Mutual waived any objections that it may have had to Dacanay's status as the real party in interest, and (2) the Commissioner did not abuse his discretion when he awarded attorney's fees and costs to Dacanay.

## BACKGROUND

On February 26, 2001, Dacanay was driving a 1991 Honda Accord insured under a motor vehicle policy issued by Liberty Mutual when the vehicle was rear-ended, resulting in $509.00 worth of damages to the vehicle's bumper. Two hours later, Dacanay went to see her regular physician and was referred to Workstar Occupational Health Systems, where she was seen by Dr. Gilbert P. Hager (Dr. Hager).

Dr. Hager examined Dacanay, noted the areas of her discomfort, and ordered x-rays of her cervical spine and right shoulder, magnetic resonance imaging (MRI) of her right shoulder, and a bone scan of her body. Dr. Hager also referred Dacanay for an arthrogram and for physical therapy. Dr. Hager continued to treat Dacanay for several weeks, including a period after Dacanay had returned to work one month after the accident. These initial medical costs do not appear to have been challenged by Liberty Mutual.

On May 23, 2001, Dr. Kent Davenport (Dr. Davenport) conducted an independent medical evaluation (IME) of Dacanay. In a report to Liberty Mutual following the IME, Dr. Davenport summarized his evaluation of Dacanay as follows:

> [Dacanay] had no prior history of any neck or right shoulder problems before her motor vehicle accident of February 26, 2001. Following that accident she was evaluated for neck and right shoulder discomfort. She has normal range of motion with minimal discomfort at this time. There are no objective findings of any significant pathology. Her bone scan is normal. There is no radicular discomfort in either upper extremity. The MRI-arthrogram of her right shoulder is normal and I feel that she has minimal soft tissue strains which should resolve with her continued home exercise program. She is now three months following the minor motor vehicle accident and I believe she is in need of no further medical treatment.

> I do not find that she has any significant permanent disability, nor does she have any limitations on her work at this time. I do not feel that she needs any further treatment except for a home exercise program which she is currently doing.

Thereafter, by standard denial-of-claim form letters addressed to Dacanay and dated June 11, 2001,[4] June 22, 2001,[5] and July 5,

suant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1), relating to substitution of parties, the current Insurance Commissioner, J.P. Schmidt (the Commissioner), has been substituted as the named party to this case.

2. The Honorable Eden Elizabeth Hifo presided.

3. The appeal was assigned to this court on June 18, 2003.

4. The claims denied on June 11, 2001 were billing statements submitted by: (1) Mina Pharmacy for various medications, in the amount of $323.12; (2) Workstar Occupational Health Systems (Workstar) for an office visit on May 29,

2001,[6] respectively, Liberty Mutual informed Dacanay that it was denying billing statements for six claims submitted by Dacanay's health care providers, for the reason that

> under the Hawaii Motor Vehicle Insurance Law ... [t]he independent medical exam dated May 23, 2001, by [Dr. Davenport], and [Dacanay's] medical history and records do not support that the benefits claimed are appropriate, reasonable, necessary or causally related to the subject motor vehicle accident in accordance with [Hawaii Revised Statutes (HRS) § ] 431:10C–103.

(Internal underscoring omitted.) The denial letters informed Dacanay that she had the following options if she wished to contest the denials:

> (1) You may request a review of any action on your claim for benefits by filing with the Automobile Insurance Commissioner (P.O. Box 3614, Honolulu, Hawaii 96811–3614) two copies of the Notice of Denial of your claim, your request for review and a statement in duplicate giving specific reasons for the request within 60 days after the date of denial of your claim.
>
> (2) You may also submit this dispute to arbitration. If you decide to submit this claim to arbitration, please send the attached copy of this Denial Form with a request for arbitration to the clerk of the [c]ircuit [c]ourt where the accident occurred. The Administrative Judge shall, within 10 days of the date of filing the request for arbitration, appoint an arbitrator to hear and determine the claim. Any fee or cost of the arbitrator shall be borne equally by the parties unless allocated by the arbitrator. You may be allowed an award of reasonable sum for attorney's fees. The arbitration shall be in accordance with and governed by the provisions of Chapter 658 HRS. An appeal may be taken from any judgment of an arbitrator to the [c]ircuit [c]ourt in manner provided for in Rule 72 of the Hawaii Rules of Civil Procedures [sic].
>
> (3) You may bring court action against [Liberty Mutual]. In this event, you should contact your lawyer.

On July 19, 2001, Dacanay, through her counsel, sent a written letter to the Commissioner, requesting a consolidated hearing to contest Liberty Mutual's denials of the six claims submitted by Dacanay's health care providers. The Insurance Division of the Department of Commerce and Consumer Affairs (DCCA) docketed Dacanay's challenges to the denials of the six claims as ATX–2001–77, ATX–2001–78, ATX–2001–79, ATX–2001–80, ATX–2001–81, and ATX–2001–82, and on August 1, 2001, a DCCA hearings officer issued a Notice of Status Conference and Order Regarding Prehearing Statements, informing the parties of a status conference scheduled for August 27, 2001 and directing them to file and serve on all other parties a written prehearing statement.

On August 22, 28, and 29, 2001, Liberty Mutual reached compromised settlements with the health care providers whose claims for payment had initially been denied. Upon payment of these settlement amounts, Dacanay exhausted the PIP benefits limit under her policy with Liberty Mutual. Accordingly, on September 21, 2001, Dacanay and Liberty Mutual filed with DCCA a "Stipulation on the Issue of Attorney's Fees and Costs and for Partial Dismissal of [Dacanay's] Claim for Personal Injury Protection Benefits" (the Stipulation).

Pursuant to the Stipulation, the parties agreed, among other things, that: (1) the dispute relating to Liberty Mutual's denials of the six contested claims "has been re-

---

2001, in the amount of $96.18; and (3) P.T. Hawaii, Inc. for massage therapy on May 29, 2001, in the amount of $117.56 and for physical therapy on May 29, 2001 and June 4, 2001, in the amount of $247.69.

**5.** The claims denied on June 22, 2001 were billing statements submitted by: (1) Workstar for an office visit on April 30, 2001, in the amount of $96.18; and (2) P.T. Hawaii, Inc. for physical therapy on June 1 and 12, 2001, in the amount of $228.66, and massage therapy on June 14, 2001, in the amount of $111.32.

**6.** The claim denied on July 5, 2001 was a billing statement for physical therapy performed on June 14, 2001, in the amount of $114.33.

solved"; (2) the six contested claims for PIP benefits are "dismissed, with prejudice"; and (3) "[t]he issue relating to [Dacanay's] claim for attorney's fees and costs remains." The Stipulation also required the parties to submit a memorandum and/or affidavit on the attorney's fees and costs issue.

On October 2, 2001, Dacanay's attorney filed with DCCA an affidavit in support of Dacanay's request for attorney's fees and costs. On October 12, 2001, Liberty Mutual filed a response, claiming for the first time that, in light of *Gamata,* Dacanay "is not the real party in interest to pursue payment on behalf of his [sic] providers." Liberty Mutual argued that Dacanay "should not have file[d] any challenges to the subject denials and thus, should not have incurred any legal fees and costs."

On November 9, 2001, a DCCA hearings officer filed his Hearings Officer's Findings of Fact, Conclusions of Law, and Recommended Order on Stipulation by the Parties (the Hearings Officer's Recommended Order) with respect to the consolidated cases. In recommending that Dacanay be awarded attorney's fees and costs in the amount of $930.15, the Hearings Officer concluded as follows:

A determination of the merits of the parties' respective positions turns on the question of whether [Dacanay] was a real party in interest for the purpose of pursuing her requests for hearings under the provisions of [HRS] § 431:10C–212.

It appears that [Liberty Mutual's] answer to this question would have been correct *if* the reason of the denial had been limited to a single asserted basis (e.g. "the applicant's medical history and records do not support that the benefits claimed are appropriate, reasonable, [or] necessary"). However, rather than being the singular basis for the denials, this reason was actually the second of three reasons set forth on the faces of the denial forms. The first reason was "The [IME] dated May 23, 2001, by [Dr. Davenport]," and the third reason was that the benefits were not "causally related to the subject motor vehicle accident or in accordance with HRS § 431:10C–103."

While [Liberty Mutual] was accurate in stating that the holding in *Gamata* is applicable where the denial of a health care billing has been issued for the sole asserted reason that the incurred benefits are not appropriate, reasonable, or necessary, the situation here does not present in such a straightforward fashion. First, since the results of Dr. Davenport's May 23, 2001 examination are not in evidence, one may only speculate about whether his opinion supported either (or which) of the other two reasons relied upon in the denials—or whether it supported some other reason. Second, by including the issue of lack of causation as an additional reason for the denials [Liberty Mutual] freed [Dacanay] from the limitations inherent in a *Gamata* type of situation. If [Liberty Mutual] were to have prevailed on that basis (i.e. that the contested benefits were not causally related to the motor vehicle accident), then [Dacanay] would have had no coverage to pay for them and would have been personally liable for making the outstanding payments to her health care providers.

Accordingly, it cannot be said that [Dacanay] played no role in the billing or payment process for medical services and that any dispute relating to the payment of medical bills was strictly between the provider and the insurer. [Dacanay's] role was not limited to simply pursuing claims on behalf of her providers—and given the multiple, alternative reasons expressed as the bases of the denials she was a real party in interest. Under the present set of circumstances she retained a direct personal interest in the resolution of the matters and thus was entitled to pursue her requests for hearings.

(Footnotes omitted.)

On December 4, 2001, Liberty Mutual filed written exceptions to the Hearings Officer's Recommended Order, urging the Commissioner to "reverse the Hearings Officer's conclusion that [Dacanay] was a real party in interest and ... order each party to bear their respective attorney's fees and costs."

On April 2, 2002, the Commissioner's Final Order, which adopted the Hearings Officer's Recommended Order as the Commissioner's

Final Order, was issued. Liberty Mutual thereafter timely appealed the Commissioner's Final Order to the circuit court.

On October 7, 2002, the circuit court entered a Judgment in favor of Dacanay and the Commissioner and against Liberty Mutual. The Judgment also dismissed Liberty Mutual's appeal [7] and awarded Dacanay "attorney's fees of 3.8 hours at $150.00 per hour plus tax." This secondary appeal by Liberty Mutual followed on October 23, 2002.

## DISCUSSION

### A. *Liberty Mutual Waived Any Real–Party–in–Interest Challenge*

#### 1.

■ Liberty Mutual argues on appeal that the Commissioner's Final Order conflicts with the holdings of *Wilson* and *Gamata* and is therefore erroneous.

Notwithstanding the express provision in HRS § 431:10C–308.6(f) (1993) [8] that "[a]ny insured ... may ... seek an administrative hearing, arbitration, or court review of a denial of no-fault benefits [9] based, in whole or in part, upon a peer review organization determination[,]" the Hawai'i Supreme Court held in *Wilson* that, pursuant to District Court Rules of Civil Procedure (DCRCP) Rule 17(a),[10] the health care provider, not the insured, is the real party in interest to enforce a claim against the no-fault insurer for payment of the provider's unpaid bill. *Wilson*, 89 Hawai'i at 49–50, 968 P.2d at 651–52.

In reaching this determination, the supreme court examined HRS § 431:10C–304(1)(A) and (B) (1993) [11] and concluded:

> ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

7. Inasmuch as the Circuit Court of the First Circuit entered a Judgment in favor of Claimant/Appellee–Appellee Flor Dacanay and the Commissioner, the dismissal of the appeal appears to be in error.

8. Hawaii Revised Statutes (HRS) § 431:10C–308.6 (1993) was repealed by Act 251, 1997 Haw. Sess. L., § 59 at 551.

9. The insured in *Wilson* was injured on April 14, 1995, when the motor vehicle insurance law, HRS chapter 431:10C, required all motor vehicles to be insured under a "no-fault policy" and referred to the benefits payable to an insured due to a motor vehicle accident as "no-fault benefits." In 1997, the Hawai'i Legislature amended HRS chapter 431:10C to replace statutory references to "no-fault policy" with "motor vehicle insurance policy" and to replace statutory references to "no-fault benefits" with "personal injury protection benefits[.]" Act 251, 1997 Haw. Sess. L. at 514.

10. District Court Rules of Civil Procedure (DCRCP) Rule 17(a) provides now, as it did at the time *Wilson v. AIG Hawaii Ins. Co.*, 89 Hawai'i 45, 968 P.2d 647 (1998) was decided, as follows:

> (a) **Real party in interest.** Every action shall be prosecuted in the name of the real party in interest; except that (1) an executor, administrator, personal representative, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in such party's own name without joining with such party the party for whose benefit the action is brought, and (2) this requirement shall not be mandatory where a subrogee is a real party in interest. No action shall be dismissed on the

11. At the time, HRS § 431:10C–304(1) (1993) provided, in relevant part, as follows:

> **Obligation to pay no-fault benefits**.... Every no-fault insurer shall provide no-fault benefits for accidental harm as follows:
> (1) Except as otherwise provided in section 431:10C–305(d):
> (A) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the following persons who sustain accidental harm as a result of the operation, maintenance, or use of the vehicle, an amount equal to the no-fault benefits payable for wage loss and other expenses to that person under section 431:10C–103(10)(A)(iii) and (iv) as a result of the injury:
> (i) Any person, including the owner, operator, occupant or user of the insured motor vehicle;
> ....
> (B) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to a provider of services on behalf of the persons listed in subparagraph (A), charges for services covered under section 431:10C–103(10)(A)(i) and (ii)[.]

The statute does not confer upon the insured the right to receive payment of medical benefits on behalf of his or her provider. In fact, the statute designates billing/payment of medical expenses to flow directly from the insurer to the provider. Therefore, as a matter of law, the insured plays no role in the billing/payment process for medical services. Any dispute relating to the payment of medical services is strictly between the insurer and the provider.

*Id.* at 49, 968 P.2d at 651 (internal citation omitted).

In *Gamata*, the insured, Edwin G. Gamata (Gamata), received treatment from Dr. Bernard Portner (Dr. Portner) following a motor vehicle collision on March 28, 1997. 90 Hawai'i at 215, 978 P.2d at 181. Gamata's no-fault insurance carrier, Allstate Insurance Company (Allstate), paid for the treatment Gamata received from Dr. Portner from April 24, 1997 through October 13, 1997. *Id.* However, in a Denial of Claim form dated October 13, 1997, Allstate informed Gamata that he was not entitled to any benefits under the Hawai'i No–Fault Law because "[p]ursuant to [the IME] report of Dr. David Sheetz (Dr. Sheetz) dated September 5, 1997, and the records available in [Gamata's] claim file, [Gamata's] continued complaints are not due to the accident." *Id.* (internal brackets and ellipsis omitted). Gamata was also notified that "if he wished to contest this determination, he had, among other options, the right to bring court action against Allstate." *Id.* (internal brackets, ellipsis, and quotation marks omitted).

On November 3, 1997, Dr. Portner submitted two treatment plans to Allstate, one requesting an MRI of Gamata's cervical spine and the second requesting that Gamata be administered a "select nerve root block injection." *Id.* By a November 12, 1997 letter, Allstate advised that it would no longer accept Dr. Portner's treatment plans for Gamata since "the IME disclosed that [Gamata's] current complaints are not attributable to the accident." *Id.* (internal brackets and ellipsis omitted). Gamata then filed a complaint against Allstate on November 18, 1997, alleging that he "had suffered personal injuries in the accident, and that Allstate's denial violated [Allstate's] statutory and contractual duties to provide no-fault benefits under HRS § 431:10C–303(a) to or on behalf of [Gamata]." *Id.* (footnotes and internal brackets and quotation marks omitted).

Notwithstanding Allstate's previous rejection of the treatment plans, Dr. Portner performed on Gamata a nerve root block injection on November 21, 1997 and an MRI on December 19, 1997. *Id.* at 216, 978 P.2d at 182. The amount outstanding on Gamata's account with Dr. Portner following these treatments was $1,658.80, *id.,* and Gamata represented in a court memorandum that he had paid Dr. Portner directly for these services. *Id.*

Following a trial held on February 26 and March 5, 1998, the circuit court entered a Judgment in favor of Allstate and against Gamata. *Id.* at 216, 219, 978 P.2d at 182, 185. On March 17, 1998, Gamata filed a request for attorney's fees and costs, claiming that such fees and costs were justified because his condition improved after receiving the challenged treatments. *Id.* at 219, 978 P.2d at 185. Allstate filed its own request for costs, as well as an opposition memorandum to Gamata's request for fees and costs. *Id.* The court ultimately denied both Gamata's and Allstate's requests for costs but partially granted Gamata's request for fees. *Id.*

On appeal, this court addressed whether Gamata's payment to Dr. Portner for the challenged treatments conferred "real party in interest" status on Gamata to pursue an action against Allstate for payment of Dr. Portner's previously unpaid bill. *Id.* at 222, 978 P.2d at 188. We concluded, in light of the supreme court's holding in *Wilson,* that "Dr. Portner was the party with an interest in payment for the services under the treatment plans" and "only Dr. Portner, not [Gamata], was entitled to pursue payment from the insurer for the cost of unreimbursed medical services to the insured." *Id.* at 224, 978 P.2d at 190 (internal quotation marks omitted). Because Dr. Portner had been paid in violation of the no-fault statute, we directed Dr. Portner to return any payments made by Gamata. We also instructed that if Dr. Portner sought reimbursement from All-

state, "he shall be joined or substituted as a party plaintiff to this action, as the case may be, pursuant to [DCRCP] Rule 17(a)." *Id.*

### 2.

In adopting the Hearings Officer's Recommended Order and awarding Dacanay attorney's fees and costs, the Commissioner construed the holding in *Gamata* as being limited to those factual situations where the insurance company denied an insured's claim "for the sole asserted reason that the incurred benefits are not appropriate, reasonable, or necessary[.]" Noting that Liberty Mutual had included the issue of lack of causation as an additional reason for the denials of the claims submitted by Dacanay's health care providers, the Commissioner concluded that this case presented a different situation from *Gamata*, since, if Liberty Mutual prevailed on the causation issue, Dacanay would be personally liable for payment of the uncovered bills.

Liberty Mutual correctly points out, however, that in *Gamata*, one of the reasons given by Allstate for its denial of payments for Dr. Sheetz's treatment plans was that Gamata's "continued complaints [were] not due to the accident." 90 Hawai'i at 215, 978 P.2d at 181 (internal ellipsis omitted). Therefore, Liberty Mutual maintains, causation was at issue in *Gamata* and, based on *Gamata*, Dacanay was not a real party in interest entitled to pursue an action against Liberty Mutual for payment of PIP claims of her health care providers' unpaid bills.

### 3.

We find it unnecessary to resolve whether Liberty Mutual's denial of PIP benefits to Dacanay's health care providers based on causation provided Dacanay with real-party-in-interest status to challenge the denials because, based on our review of the record, we conclude that Liberty Mutual waived any objections to Dacanay's status as a real party in interest.

We note initially that unlike in *Wilson* and *Gamata*, which involved lawsuits filed in the district court, this appeal stemmed from an administrative proceeding before the Commissioner. Therefore, DCRCP Rule 17, relating to real parties in interest in civil proceedings before the district courts, does not appear applicable to this case.[12]

Assuming that DCRCP Rule 17 or real-party-in-interest principles were applicable, we note that cases construing the parallel Federal Rules of Civil Procedure (FRCP) Rule 17[13] or state rules modeled after FRCP Rule 17 have generally concluded that the real-party-in-interest defense is not jurisdictional and may be waived if not timely raised. *See, e.g., Steger v. General Elec. Co.*, 318 F.3d 1066, 1080 (11th Cir.2003) (observing that the purpose of FRCP Rule 17 is to "protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata" and, therefore, the rule is for the "benefit of a defendant, and may be deemed waived") (internal ellipsis and quotation marks omitted); *Fox v. McGrath*, 152 F.2d 616, 618 (2d Cir.1945) (recognizing that the general rule is "that the defense is not jurisdictional, but is, indeed, freely waivable by the parties

12. Based on our review of the Hawaii Administrative Rules applicable to proceedings before the Commissioner, it does not appear that the DCRCP have been incorporated as part of the rules.

13. Federal Rules of Civil Procedure Rule 17(a) provides as follows:
**Parties Plaintiff and Defendant; Capacity**
**(a) Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

through failure to make claim therefor"); *Nikimiha Secs. Ltd. v. Trend Group Ltd.,* 646 F.Supp. 1211, 1224 (E.D.Pa.1986) (stating that the "real party in interest defense is for the benefit of a defendant, and should be raised in timely fashion or it may be deemed waived") (internal quotation marks omitted); *Esquire Swimming Pool Prods., Inc. v. Pittman,* 114 R.I. 238, 332 A.2d 128, 130 (1975) (holding that "undue delay" in invoking the protection of Rule 17(a) of Rhode Island's Superior Court Rules of Civil Procedure, "may result in the defendant's being deemed to have waived his [or her] right to raise this objection" and that a defendant will not be permitted "to withhold his [or her] objection under Rule 17(a) until the eleventh hour in order to entrap the plaintiff").

In this case, the record reflects that Liberty Mutual's denials of the claims of Dacanay's health providers were addressed directly to Dacanay and specifically instructed her that if she wished to challenge the denials, she could either seek an administrative review by the Commissioner, submit the dispute to arbitration, or bring a court action against Liberty Mutual. When Dacanay followed Liberty Mutual's instruction and sought a review by the Commissioner, Liberty Mutual did not object to her status as a real party in interest. Additionally, Liberty Mutual settled the claims with Dacanay's providers, stipulated with Dacanay that the dispute relating to the denials had been resolved, and stipulated to the dismissal of Dacanay's claims before the Commissioner for the denied PIP benefits. Liberty Mutual only questioned Dacanay's status as a real party in interest after Dacanay sought an award of attorney's fees and costs and it was too late for Dacanay to substitute her health care providers as the real parties to this case.

Under the circumstances presented by this case, we conclude that Liberty Mutual waived any objection that it may have had to Dacanay's real-party-in-interest status.

**B.** *The Commissioner Did Not Abuse His Discretion in Awarding Dacanay Attorney's Fees and Costs*

HRS 431:10C–211(a) (2004) provides now, as it did when Dacanay filed her request for an administrative proceeding before the Commissioner, as follows:

**Attorney's fees.** (a) A person making a claim for personal injury protection benefits may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs of suit in an action brought by or against an insurer who denies all or part of a claim for benefits under the policy, unless the court upon judicial proceeding or the commissioner upon administrative proceeding determines that the claim was unreasonable, fraudulent, excessive, or frivolous. Reasonable attorney's fees, based upon actual time expended, shall be treated separately from the claim and be paid directly by the insurer to the attorney.

According to Liberty Mutual, "[s]imply because [HRS] § 431:10C–211(a), allows reasonable attorney's fees and cost to be awarded in a hearing for denial of no-fault benefits, it does not necessarily mean that it must be awarded[,]" and "since [Dacanay] is not the real party in interest, she should not have filed any challenges to the subject denials and thus, should not have incurred any legal fees and costs."

In light of our conclusion that Liberty Mutual waived any challenge to Dacanay's status as a real party in interest, we hold that the Commissioner did not abuse his discretion in awarding attorney's fees and costs to Dacanay. *See Government Employees Ins. Co. v. Hyman,* 90 Hawai'i 1, 7, 975 P.2d 211, 217 (1999).

### CONCLUSION

The Judgment entered by the circuit court in this case is somewhat confusing. It states, in part:

This matter having been heard by the [c]ourt, and the [c]ourt having entered its ORDER DENYING [LIBERTY MUTUAL'S] APPEAL OF THE [COMMISSIONER'S] FINAL ORDER,

IT IS HEREBY ORDERED AND ADJUDGED that judgment entered for [DACANAY] and [THE COMMISSIONER], against [LIBERTY MUTUAL], and that the appeal be and it is hereby dismissed.

There is no order denying Liberty Mutual's appeal of the Commissioner's Final Order in

the record on appeal. Furthermore, inasmuch as the circuit court entered a Judgment in favor of Dacanay and the Commissioner, the Commissioner's Final Order should have been affirmed and the appeal to the circuit court should not have been dismissed.

Accordingly, we remand this case to the circuit court, with instructions that the first and second paragraphs of the Judgment be amended, consistent with this opinion. In all other respects, the Judgment is affirmed.

Dissenting Opinion of FOLEY, J.

I respectfully dissent. Under *Wilson v. AIG Hawaii Ins. Co.*, 89 Hawai'i 45, 968 P.2d 647 (1998), Dacanay was not the real party in interest to pursue claims against Liberty Mutual before the Insurance Commissioner. Under *Wilson,* only Dacanay's health providers had standing to contest Liberty Mutual's denial of billing statements submitted by the health providers.

Because Dacanay had no standing to pursue these claims against Liberty Mutual before the Insurance Commissioner, she had no standing to seek attorney's fees and costs under Hawaii Revised Statutes § 431:10C–211(a) for a claim she was not authorized to make. Neither the Insurance Commissioner nor Liberty Mutual could bestow standing to Dacanay that the legislature has refused to grant and the Hawai'i Supreme Court has refused to recognize.