265 P.3d 470

CHUNG MI AHN,
Respondent/Claimant/Appellant/Appellee–
Appellee,

v.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, Petitioner/Respondent/Ap-
pellee/Appellant–Cross–Appellee,

and

Gordon I. Ito,[1] Insurance Commissioner,
Department of Commerce and Consum-
er Affairs, Respondent/Appellee/Appel-
lee–Cross–Appellant.

Kee Sun Kim,
Respondent/Claimant/Appellant/Appellee–
Appellee,

v.

Liberty Mutual Fire Insurance Company,
Petitioner/Respondent/Appellee/Appellant–
Cross–Appellee,

and

Gordon I. Ito, Insurance Commissioner,
Department of Commerce and Consum-
er Affairs, Respondent/Appellee/Appel-
lee–Cross–Appellant.

Nos. SCWC–28314, SCWC–28315.

Supreme Court of Hawai'i.

Oct. 4, 2011.

---

1. During the pendency of this action, Gordon I. Ito (Ito or Insurance Commissioner Ito) succeeded J.P. Schmidt (Schmidt, Insurance Commissioner, or Insurance Commissioner Schmidt) as Insurance Commissioner. Therefore, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1) (2010), Ito has been substituted for Schmidt.

James H. Monma of Matsui, Chung & Ikehara (Randall Y.S. Chung of Matsui, Chung & Ikehara with him on the briefs), for Petitioner/Respondent/Appellee/Appellant–Cross–Appellee Liberty Mutual Fire Insurance Company.

Melvin Y. Agena of The Law Offices of Melvin Y. Agena (Andrew A. Agard of The Andrew A. Agard Law Office with him on the briefs) for Chung Mi Ahn and Kee Sun Kim Respondents/Claimants/Appellants/Appellees–Appellees.

Elmira K.L. Tsang, Deputy Attorney General, State of Hawai'i (David A. Webber and Deborah Day Emerson, Deputy Attorneys General, State of Hawai'i, on the briefs) for Respondent/Respondent/Appellee/Appellee–Cross Appellant Insurance Commissioner of the Department of Commerce and Consumer Affairs.

NAKAYAMA, Acting C.J., ACOBA, DUFFY, and McKENNA, JJ., and Circuit Judge CHANG, in place of RECKTENWALD, C.J., Recused.

Opinion of the Court by McKENNA, J.

## I. SUMMARY

In *Wilson v. AIG Hawaii Ins. Co.*, 89 Hawai'i 45, 50–51, 968 P.2d 647, 652–53 (1998), we held that unless an insurer's non-payment of personal injury protection (PIP) benefits[2] jeopardizes an insured's ability to

---

2. PIP benefits are currently defined by Hawai'i Revised Statutes (HRS) § 431:10C–103.5, and

generally refer to expenses for treatment of physical and psychological injuries caused by motor

reach the minimum amount of medical expenses required to file a tort lawsuit,[3] insureds are not "real parties in interest" allowed to pursue lawsuits seeking payment of PIP benefits to providers. Although a statute expressly gave insureds the right to seek court review of PIP denials, we concluded that insureds do not have legal rights under substantive law to enforce payment of PIP benefits to providers. *See* 89 Hawai'i at 48, 968 P.2d at 650. We also stated that "preservation of the integrity of the therapeutic relationship between physician and patient" was merely an "altruistic concern," because PIP benefit laws insulated an insured from the billing and payment process. 89 Hawai'i at 50, 968 P.2d at 652.

Due to developments after *Wilson*, "cogent reasons and inescapable logic" compel us to overrule its holding, and we now hold that insureds are real parties in interest in actions against insurers regarding PIP benefits.

## II. BACKGROUND OF THE LAW

An explanation of *Wilson* and its progeny, as well as of Act 198 of 2006, is provided for a better understanding of our analysis.

### A. *Wilson* and Its Progeny

#### 1. *Wilson v. AIG Hawaii Ins. Co.*

In *Wilson*, AIG Hawaii Insurance Company (AIG) denied a no-fault claim for surgical treatment based on a peer review organization (PRO) report concluding the treatment

was neither appropriate nor reasonable. 89 Hawai'i at 46, 968 P.2d at 648. Wilson brought suit in the District Court of the First Circuit (district court) based on the then existing PRO statute, HRS § 431:10C–308.6(f),[4] which expressly provided that "*any insured* or provider *may . . . seek* an administrative hearing, arbitration, or *court review of a denial of no-fault benefits based, in whole or in part, upon a peer review organization determination.*" *Id.* (some emphasis in original).

Despite the statute, AIG moved for summary judgment based on arguments that (1) Wilson lacked standing to pursue payment of medical bills to her provider; and (2) that the controversy was moot because there was no effective remedy because Wilson bore no liability under the law for payment of the provider's services. *See id.*

We acknowledged that HRS § 431:10C–308.6(f) expressly gave Wilson the right to seek court review of AIG's denial of PIP benefits, but noted her admission that she was "effectively bringing the action for the benefit of her primary treating physician." 89 Hawai'i at 48, 968 P.2d at 650. We agreed with the ICA that the issue was not whether Wilson had standing, but whether she was a real party in interest pursuant to District Court Rules of Civil Procedure (DCRCP) Rule 17(a).[5] 89 Hawai'i at 47–48, 968 P.2d at 649–50.

> *Any insured* or provider *may*, in addition to or in lieu of reconsideration, *seek* an administrative hearing, arbitration, or *court review of a denial of no-fault benefits based, in whole or in part, upon a peer review organization determination.*

(Emphasis added). HRS § 431:10C–308.6 was repealed in 1998. *See* 1997 Haw. Sess. Laws Act 251, § 59 at 551. The PRO system was repealed because it had "become expensive and time consuming," and had "resulted in litigation between insureds and their insurance companies." *See* H. Stand. Comm. Rep. No. 250, in 1997 House Journal, at 1211.

vehicle accidents. The underlying facts in *Wilson* occurred before the Legislature's 1997 overhaul of the no-fault law, in which the Legislature removed PIP benefits from the definition of no-fault benefits under HRS § 431: 10C–103 (10)(A), and created the new section HRS § 431:10C–103.5. *See generally* 1997 Haw. Sess. Laws Act 251, §§ 2 and 13 at 520–25; see *Wilson*, 89 Hawai'i at 48–49, 968 P.2d at 650–51, for the prior definition of "no-fault benefits," which also included wage loss and other benefits. The terms PIP benefits and no-fault benefits are used interchangeably in this opinion.

3. This amount, which changes, is commonly referred to as the "tort threshold."

4. HRS § 431:10C–308.6(f) provided, in pertinent part:
 (f) An insurer, provider, or insured may request a reconsideration by the peer review organization of its initial determination. . . .

5. In discussing "real party in interest" analysis, we referred to the ICA's decision in *Lagondino v. Maldonado*, 7 Haw.App. 591, 789 P.2d 1129 (1990). *See Wilson*, 89 Hawai'i at 47–48, 968 P.2d at 649–50.

**4**

DCRCP Rule 17(a) provided then, as it does now:

> (a) **Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest; except that (1) . . . a party authorized by statute may sue in such party's own name without joining with such party the party for whose benefit the action is brought[.]

Because HRS § 431:10C–308.6(f) expressly gave Wilson the right to pursue court action, based on the clear language of DCRCP Rule 17(a), the ICA had deemed Wilson a real party in interest.[6]

Despite the language of DCRCP Rule 17(a), however, we stated that the inquiry could not end there. *See* 89 Hawai'i at 48, 968 P.2d at 650. We stated, "to qualify as a real party in interest, a party must also have a legal right under substantive law to enforce the claim in question." *Id.*

We then discussed HRS §§ 431:10C–304(1)(A) and (1)(B),[7] pursuant to which insurers are required to pay medical expenses directly to providers. 89 Hawai'i at 48–49, 968 P.2d at 650–51. We noted that under HRS § 431:10C–304(1), an insurer is obligated to make direct payment to the insured only for wage loss, expenses incurred as a result of accidental harm, funeral services, and attorney's fees and costs.[8] *See* 89 Hawai'i at 49, 968 P.2d at 651. We pointed out that H.R.S. § 431:10C–304(1) does not confer upon an insured the right to receive payment of medical benefits on behalf of one's provider, but rather designates billing and payment of medical expenses to flow between insurer and provider. *See id.* We noted that the insured plays no role in this process. *See id.* We also cited HRS §§ 431:10C–308.5(e) [9] and

6. *Wilson v. AIG Haw. Ins. Co.*, No. 20349, slip op. (App. Oct. 16, 1997) (depublished by *Wilson*, 89 Hawai'i at 51, 968 P.2d at 653).

7. When suit was commenced in *Wilson*, HRS §§ 431:10C–304(1)(A) and (1)(B) read as follows:
 **Obligation to pay no-fault benefits.** Every no-fault insurer shall provide no-fault benefits for accidental harm as follows:
 (1) Except as otherwise provided in section 431:10C–305(d):
 (A) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, *without regard to fault, to the following* persons who sustain accidental harm as a result of the operation, maintenance or use of the vehicle, an amount equal to the no-fault benefits payable for wage loss and other expenses to that person under section 431:10C–103(10)(A)(iii) and (iv) as a result of the injury:
 (i) Any person, including the owner, operator, occupant, or user of the insured motor vehicle;
 (ii) Any pedestrian (including bicyclist); or
 (iii) Any user or operator of a moped as defined in section 249–1;
 (B) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to a provider of services on behalf of the persons listed in item (1)(A) charges for services covered under section 431:10C–103(10)(A)(i) and (ii)[.]
 HRS § 431:10C–103(10)(A)(i) and (ii) related to medical and rehabilitation expenses. In 1997, HRS § 431:10C–304 was amended and the language of HRS § 431:10C–304(1)(B) was inserted in HRS § 431:10C–304(1). *See* 1997 Haw. Sess.

Laws Act 251, § 41 at 538–39 (effective January 1, 1998). HRS § 431:10C–304 now reads, in pertinent part, as follows:
 **Obligation to pay personal injury protection benefits.**
 . . . Every personal injury protection insurer shall provide personal injury protection benefits for accidental harm as follows:
 (1) Except as otherwise provided in section 431:10C–305(d), in the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the provider of services on behalf of the following persons who sustain accidental harm as a result of the operation, maintenance, or use of the vehicle, an amount equal to the personal injury protection benefits as defined in section 431:10C–103.5(a) payable for expenses to that person as a result of the injury:
 (A) Any person, including the owner, operator, occupant, or user of the insured motor vehicle;
 (B) Any pedestrian (including a bicyclist); or
 (C) Any user or operator of a moped as defined in section 249–1;
 HRS § 431:10C–304 (2000). No substantive changes were made to HRS § 431:10C–304(1)(A)–(C) when HRS Chapter 431:10C was amended in 1998 and 2000.

8. These provisions have been moved from HRS § 431:10C–304(1), and HRS §§ 431:10C–302(2), (4), and (5) now provide *optional* coverage for wage loss, funeral expenses, and other expenses. *See* HRS § 431:10C–302 (1998). Attorney's fees are now addressed in HRS § 431:10C–211.

9. Now HRS § 431:10C–308.5(f).

431:10C–308.6(j)(1993),[10] which prohibited a provider from collecting payment of medical services from an insured. *See id.*

We concluded, "viewing these statutes *in pari materia,*[11] ... it is clear that the no-fault law does not allow an insured to enforce a claim for unpaid medical expenses against an insurer on behalf of his or her provider[;]" rather, we stated, "[t]he no-fault statutory scheme strongly suggests that the provider, not the insured, is entitled to pursue payment from the insurer for the cost of unreimbursed medical services to the insured." 89 Hawai'i at 49–50, 968 P.2d at 651–52. Accordingly, we held that Wilson was not a real party in interest with respect to her claim against AIG for no-fault benefits to satisfy her provider's unpaid bill. *See* 89 Hawai'i at 50, 968 P.2d at 652. '

In so holding, we reversed the ICA's holding that Wilson was a real party in interest. *See* 89 Hawai'i at 51, 968 P.2d at 653. We opined that the ICA's concerns regarding the insured's continuing relationship with the provider, and her personal interest in having the insurer pay the provider, were merely altruistic. See 89 Hawai'i at 50, 968 P.2d at 652.

### 2. *Gamata v. Allstate Ins. Co.*

Wilson was decided while the appeal in *Gamata v. Allstate Ins. Co.*, 90 Hawai'i 213, 978 P.2d 179 (App.1999) was pending. In *Gamata*, Allstate Insurance Company (Allstate) denied continued PIP benefits based on a medical opinion that the insured's continued complaints were not caused by the accident. *See* 90 Hawai'i at 215, 978 P.2d at 181. Gamata brought suit pursuant to HRS

§ 431:10C–314[12] in district court, claiming that Allstate violated its statutory and contractual duties to provide no-fault benefits. *See id.* After filing his complaint, Gamata received and paid for the contested treatment despite Allstate's denial. *See* 90 Hawai'i at 214, 978 P.2d at 180.

The ICA vacated and remanded the district court's ruling affirming Allstate's denial because the court had applied an incorrect legal standard.[13] 90 Hawai'i at 220–22, 978 P.2d at 186–88. Due to *Wilson*, however, the ICA ruled that any payments made by Gamata to the provider must, "as a logical consequence, be returned to [Gamata]."[14] 90 Hawai'i at 224, 978 P.2d at 190. In addition, the ICA ruled that if the provider sought reimbursement, he had to become a party plaintiff. *See id.*

### 3. *Dacanay v. Liberty Mut. Ins. Co.*

In *Dacanay v. Liberty Mut. Ins. Co.*, 108 Hawai'i 393, 396, 120 P.3d 1128, 1131 (App. 2005), Dacanay initiated proceedings with the Insurance Commissioner pursuant to HRS § 431:10C–212, after Liberty Mutual Insurance Co. (Liberty Mutual) refused to pay several claims for PIP benefits submitted by providers who had treated him after an automobile accident. Liberty Mutual then reached settlement with the providers. *See* 108 Hawai'i at 395, 120 P.3d at 1130. When Dacanay requested attorney's fees and costs, however, Liberty Mutual asserted, in light of *Wilson* and *Gamata*, that Dacanay was not a real party in interest and was therefore not entitled to an award of attorney's fees and

---

10. Repealed in 1998. *See* 1997 Haw. Sess. Laws Act 251, § 59 at 551.

11. HRS § 1–16 provides, as it did in 1998:

**Laws in pari materia.** Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.

12. HRS § 431:10C–314 provides, as it did in 1999:

**Jurisdiction.** Any person may bring suit for breach of any contractual obligation assumed by an insurer under a policy of insurance containing such mandatory or optional provisions in any state court of competent jurisdiction.

13. The district court had affirmed Allstate's denial on the basis that it considered the treatment "palliative" rather than "curative," not "whether the expenses were appropriate, reasonable, and necessarily incurred." *Gamata*, 90 Hawai'i at 220–22, 978 P.2d at 186–88.

14. The ICA also cited to this court's statement in *Gov't Emp. Ins. Co. v. Hyman*, 90 Hawai'i 1, 7, 975 P.2d 211, 217 (1999) that "the insured has a right to receive treatment of injuries, [while] the provider has a right to receive payment for treatment rendered." (Brackets in original.)

costs. See 108 Hawai'i at 396, 120 P.3d at 1131.

The ICA declined to address the real party in interest issue, deeming its resolution unnecessary. *See* 108 Hawai'i at 399, 120 P.3d at 1134. Based on its review of the record, the ICA concluded that Liberty Mutual had waived any objections to Dacanay's status as a real party in interest.[15] *See id.*

The ICA stated in *dicta,* however, that unlike *Wilson* and *Gamata,* which involved lawsuits filed in district court, *Dacanay* stemmed from an administrative proceeding, and thus, DCRCP Rule 17 did not appear applicable.[16] *See id.*

### B. Act 198 of 2006

#### 1. *Circumstances Leading to Act 198*

Act 198 was triggered by our holding in *Orthopedic Assocs. of Haw., Inc. v. Haw. Ins. & Guar. Co., Ltd.,* 109 Hawai'i 185, 124 P.3d 930 (2005). This case involved the "down-coding" of bills submitted by providers to PIP insurers:

Between January 1, 1993 and December 31, 1999, each of the providers submitted bills to one or more of the insurers for non-emergency treatments rendered to thousands of personal injury protection (PIP) insureds allegedly injured in motor vehicle accidents. The insurers were obligated to pay appropriate PIP benefits under HRS chapter 431:10C on behalf of

their insureds.... The insurers, however, rather than pay the bills as submitted, or deny the claim (in whole or in part), altered the treatment code because they believed that, "based on the available information, the services rendered appear to be best described by [a different medical treatment] code." The resulting effect of changing the treatment codes was a reduction in the payment for the service rendered, which the parties generally refer to as "down-coding." The insurers, thus, (1) paid the bills pursuant to the adjusted treatment codes and (2) offered to negotiate with the providers as to the unpaid portions.

109 Hawai'i at 191, 124 P.3d at 936 (footnote omitted).

We held:

In light of the unambiguous mandatory language of HRS § 431:10C-304(3)(B), an insurer is required to provide written notice of its denial—in whole or in part—of the claim for benefits. Written notice to the claimant is required where the denial or partial denial relates to the treatment service and/or the charges therefor. Where the denial or partial denial involves treatment services, the insurer must also provide written notice to the provider.

109 Hawai'i at 196, 124 P.3d at 941.

Before *Orthopedic Associates,* HRS § 431:10C-304(3)(B), which requires that an

**15.** The circumstances the ICA considered when concluding that Liberty Mutual had waived any objection included that Liberty Mutual (1) addressed its denial of Dacanay's health providers' claims directly to Dacanay and specifically alerted her to the option of seeking an administrative review, if she wished to challenge the denials; (2) did not object to Dacanay's status as a real party in interest when she sought review by the Commissioner; (3) settled the claims with Dacanay's providers; (4) stipulated with Dacanay that the dispute relating to the denials had been resolved; (5) stipulated to the dismissal of Dacanay's claims before the Commissioner for the denied PIP benefits; and (6) only questioned Dacanay's status as a real party in interest after she sought an award of attorney's fees and costs and it was too late for her to substitute her health care providers as the real parties to her case. *See* 108 Hawai'i at 400, 120 P.3d at 1135.

**16.** Because we overrule *Wilson,* we do not address a question raised by the insureds in these cases but not addressed by the ICA: whether the real party interest holding, which is based on

DCRCP Rule 17(a), is applicable to administrative proceedings. One of the purposes of administrative remedies is to enable parties to resolve disputes in a less cumbersome and expensive manner than normally encountered in a trial in court. 2 Am.Jur.2d *Administrative Law* § 4. Based on Hawai'i Administrative Rules (HAR) § 16-201-1, however, which provides that "[w]henever this chapter is silent on a matter, the authority or hearings officer may refer to the Hawaii Rules of Civil Procedure for guidance," Insurance Commissioner Schmidt's Final Orders applied *Wilson*'s real party in interest holding to these insureds. Although we do not decide the issue, we note that "[i]t is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement[,]" *Kaleikini v. Thielen,* 124 Hawai'i 1, 33, 237 P.3d 1067, 1099 (2010) (Acoba, J., concurring) (citation omitted), and HRS § 431:10C-212 expressly gives insureds the right seek to administrative review.

insurer mail denial notices in triplicate to the claimant, and mail another copy to the provider, was followed by insurers only for *complete* denials of a provider's PIP billing. This holding, however, required that such notices be mailed any time an insurer partially denied a provider's PIP billing.

### 2. Text of Act 198 of 2006

The Legislature responded to *Orthopedic Associates* through Act 198 of 2006. · Act 198 provides as follows:

SECTION 1. The legislature notes that section 431:10C–308.5, Hawaii Revised Statutes, limits the charges for and frequency of medical treatment covered by personal injury protection (PIP) benefits. In accordance with this limitation on charges, the motor vehicle insurer has an obligation to limit payment of the insured's benefits for treatment.

The legislature finds that, as a result of the Hawaii Supreme Court's ruling in *Orthopedic Associates of Hawaii, Inc. v. Hawaiian Insurance & Guaranty Co., Ltd.,* No. 24634, slip. op. [109 Hawai'i 185, 124 P.3d 930] (Dec. 7, 2005), insurers have implemented a process of issuing denials of benefits on all payments that are less than the amount billed. Some of the larger insurers are issuing several thousand denials each month. Copies of these denials are given to both the provider and the insured. This has prompted many calls from insureds who do not understand the process and are concerned that the insurer might be dehying them access to medical treatment.

This Act is intended to clarify the process to be followed in any billing adjustment or dispute where an insurer receives and does not dispute the treatment rendered but finds the billing to exceed the permissible charges. This Act is not intended to affect the merits of the amount billed or the amount owed under PIP. Specifically, this Act clarifies that any adjustments to payment of the amount billed is an acceptance of the treatment and not a denial of benefit. Therefore, section 431:10C–304(3), which requires a written denial of benefit, is not applicable to an adjustment to the amount payable under PIP benefits. Rather than issue a denial, this Act clarifies that the insurer's obligation is to "pay all undisputed charges" and "negotiate in good faith with the provider on the disputed charges."

SECTION 2. Section 431:10C–308.5, Hawaii Revised Statutes, is amended by amending subsection (e) to read as follows:

"(e) In the event of a dispute between the provider and the insurer over the amount of a charge or the correct fee or procedure code to be used under the workers' compensation supplemental medical fee schedule, the insurer shall:

(1) Pay all undisputed charges within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued and demand for payment thereof; and

(2) Negotiate in good faith with the provider on the disputed charges for a period up to sixty days after the insurer has received reasonable proof of the fact and amount of benefits accrued and demand for payment thereof.

If the provider and the insurer are unable to resolve the dispute[,] *after a period of sixty days pursuant to paragraph (2),* the provider, insurer, or claimant may submit the dispute to the commissioner, arbitration, or court of competent jurisdiction. The parties shall include documentation of the efforts of the insurer and the provider to reach a negotiated resolution of the dispute. *This section shall not be subject to the requirements of section 431:10C–304(3) with respect to all disputes about the amount of a charge or the correct fee and procedure code to be used under the workers' compensation supplemental medical fee schedule. An insurer who disputes the amount of a charge or the correct fee or procedure code under this section shall not be deemed to have denied a claim for benefits under section 431:10C–304(3); provided that the insurer shall pay what the insurer believes is the amount owed and shall furnish a written explanation of any adjustments to the provider and to the claimant at no charge, if requested. The*

*provider, claimant, or insurer may submit any dispute involving the amount of a charge or the correct fee or procedure code to the commissioner, to arbitration, or to a court of competent jurisdiction."*

SECTION 3. Statutory material to be repealed is bracketed and stricken. New statutory material is underscored.

SECTION 4. This Act shall take effect upon its approval.

2006 Haw. Sess. Laws Act 198, §§ 1–4 at 840–41 (effective June 14, 2006).

## III. BACKGROUND OF THESE CONSOLIDATED CASES

### A. Administrative Proceedings

These cases arose from Liberty Mutual Fire Insurance Company's (Liberty Mutual) denial of PIP benefits to Chung Mi Ahn (Ahn) and Kee Sun Kim (Kim) (collectively Insureds) for treatments after motor vehicle accidents in 2004 and 2005. After the denials, Insureds each sought administrative reviews with the Insurance Division of the Department of Commerce and Consumer Affairs (DCCA) pursuant to HRS § 431:10C–212, which allows insureds to seek administrative review of PIP denials.

Based upon our holding in *Wilson*, Liberty Mutual filed motions for summary judgment, contending that Insureds were not real parties in interest to pursue PIP benefits, and that the claims had to be pursued directly by the providers. The Insurance Commissioner's Final Orders granting the motions were filed on November 23, 2005, and May 12, 2006, respectively.

### B. Circuit Court Appeal

Insureds appealed to the Circuit Court of the First Circuit (circuit court) pursuant to HRS § 91–14. After a consolidated hearing in October of 2006, the circuit court concluded that Act 198 of 2006, effective June 14, 2006, had "legislatively overruled" *Wilson*. The circuit court concluded that Insureds were real parties in interest to challenge

Liberty Mutual's denials despite having reached the tort threshold.

### C. ICA Appeal

Both Liberty Mutual and the Insurance Commissioner appealed the circuit court's ruling to the ICA. In a published opinion in *Kim v. Liberty Mut. Fire Ins. Co.*, 124 Hawai'i 415, 416, 245 P.3d 488, 489 (App.2010), the ICA upheld the circuit court, stating:

> In this appeal, we must determine the impact that Act 198 and its legislative history have on *Wilson v. AIG*'s real-party-in-interest analysis. We conclude that the Legislature, through Act 198 and its accompanying legislative history, has clarified its intent and the nature of an insured claimant's interest in enforcing his or her medical provider's claim for payment, such that Kim qualifies as a real party in interest. Accordingly, we hold that Kim is a real party in interest and is entitled to pursue her administrative action which challenged Liberty Mutual's refusal to pay Kim's medical provider for the acupuncture treatments provided to Kim.

The ICA analyzed our decision in *Wilson*, Act 198 of 2006, and the legislative history of Act 198 in reaching this conclusion. *See generally* 124 Hawai'i at 418–24, 245 P.3d at 491–97.

The ICA then ruled in favor of Ahn through a summary disposition order based on its opinion in *Kim*. *See Ahn v. Liberty Mut. Fire Ins. Co.*, No. 28314, 124 Hawai'i 425, 2011 WL 242353 (App. Jan. 25, 2011) (SDO).

### D. Certiorari Applications

Liberty Mutual filed applications for writs of certiorari in both cases.[17] Liberty Mutual argues the ICA gravely erred in concluding that HRS § 431:10C–308.5(e), as amended by Act 198 of 2006, conferred real party in interest status on Insureds. It argues that the statute governs fee disputes, not complete denials, and that the ICA's decision conflicts with our holding in *Wilson*. We

---

**17.** Although Insurance Commissioner Schmidt appealed the circuit court's consolidated decision to the ICA, Insurance Commissioner Ito did not

file certiorari applications or responses, and at oral argument, counsel stated that Ito defers to our decision on the real party in interest issue.

accepted certiorari and consolidated the cases for oral argument and disposition.

## IV. DISCUSSION

A. **Act 198 of 2006 is not retrospective; therefore, the ICA erred in affirming the circuit court's reversal of the Insurance Commissioner's Final Orders**

 "Review of a decision made by a court upon its review of an administrative decision is a secondary appeal." *Brescia v. North Shore Ohana*, 115 Hawai'i 477, 491, 168 P.3d 929, 943 (2007) (citations omitted). The standard of review is one in which this court must determine whether the court under review, in this case the ICA, was right or wrong in its decision. *See id.* (citation omitted). The standards as set forth in HRS § 91–14(g) (1993) are applied to the agency's decision. *See id.* HRS § 91–14(g) provides:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> . . . .
>
> (4) Affected by other error of law [.]

Therefore, the ICA's conclusion regarding the impact of Act 198 on our holding in *Wilson* is a question of law reviewed under the right/wrong standard of review. We now address whether the ICA's conclusion was right or wrong.

 Article VI, section 7 of the Hawai'i Constitution provides that the "supreme court shall have power to promulgate rules ... in all civil ... cases for all courts relating to ... procedure ...," which shall have the force and effect of law." *Wilson* interpreted a rule of civil procedure inconsistently with a prior act of the legislature, HRS § 431:10C–308.6(f),[18] which provided that an insured could seek court review of a PIP denial. Our procedural rule, DCRCP Rule 17(a), was ac-

tually consistent with the statute, and provided that a party given a statutory right of action is a real party in interest. We interpreted the rule in the context of the no-fault statutory scheme, however, and concluded that *Wilson* was not a real party in interest. In general, when a conflict between two laws is irreconcilable, the later enactment governs. *See* 73 Am.Jur.2d *Statutes* § 169. Therefore, *Wilson*'s holding prevailed over the statute.

In these consolidated cases, the Insurance Commissioner's Final Orders were issued well before the June 14, 2006 effective date of Act 198 of 2006. Assuming *Wilson*'s interest holding applied to administrative agencies,[19] the Insurance Commissioner was required to follow it. Although the circuit court's agency appeal hearing took place in October 2006, after the effective date of Act 198, pursuant to HRS § 91–14(g), the circuit court sat as an appellate court reviewing an agency decision, and was ruling on whether the Insurance Commissioner's Final Orders were correct under the law at the time of issuance. Likewise, the ICA was then reviewing whether the circuit court's decision was correct under the law.

Act 198 of 2006, however, was an enactment of the Legislature after *Wilson*. If, as concluded by the circuit court and the ICA, Act 198 conferred real party in interest on the Insureds, the Act would have had to have retrospective effect to be of benefit to these Insureds.

HRS § 1–3 governs whether a legislative enactment has retrospective effect, and provides:

> **§ 1–3 Laws not retrospective.** No law has any retrospective operation, unless otherwise expressed or obviously intended.

Although the Legislature could have expressed its intent to give Act 198 retrospective application, as noted above, Section 4 of Act 198 of 2006 states that "(t)his Act shall take effect upon its approval." Therefore, the Act does not express an intent to have retrospective application.

18. *See* n.4, *supra.*

19. *See* n.16, *supra.*

■ The parties agreed that the Act had retrospective effect, but party agreements on questions of law are not binding on a court. *See Beclar Corp. v. Young*, 7 Haw.App. 183, 190, 750 P.2d 934, 938 (App.1988) (citation omitted); *see also State v. Tangalin*, 66 Haw. 100, 101, 657 P.2d 1025, 1026 (1983) ("[I]t is well established that matters affecting the public interest cannot be made the subject of stipulation so as to control the court's action with respect thereto.") (Citation omitted.)

Therefore, Act 198 of 2006 was not effective until June 14, 2006, after the Insurance Commissioner's Final Orders. Accordingly, the ICA erred in affirming the judgment of the circuit court reversing the Commissioner's Final Orders on the basis of Act 198 of 2006.

### B. *Wilson* is overruled

Although the ICA erred in affirming the circuit court, it correctly analyzed Act 198 of 2006 and its legislative history, which expounded upon the nature of an insured's interest in pursuing PIP benefits. Act 198 of 2006 and these consolidated cases provide occasion for us to revisit our holding in *Wilson*.

■ We do not lightly overrule precedent. As we stated in *State v. Garcia*, 96 Hawai'i 200, 205–06, 29 P.3d 919, 924–25 (2001):

... The "policy of courts to stand by precedent and not to disturb settled points" is referred to as the doctrine of stare decisis, *id.* at 1406, and operates "as a principle of self-restraint ... with respect to the overruling of prior decisions." *Robinson v. Ariyoshi*, 65 Haw. 641, 653 n. 10, 658 P.2d 287, 297 n. 10 (1982).... The benefit of stare decisis is that it "furnishes a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; ... eliminates the need to relitigate every relevant proposition in every case; and ... maintains public faith in the judiciary as a source of impersonal and reasoned judg-

ments." *Id.* (citing *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)).

While "there is no necessity or sound legal reason to perpetuate an error under the doctrine of stare decisis[,]" *id.* (internal quotation marks and citation omitted), we agree with the proposition expressed by the United States Supreme Court that a court should "not depart from the doctrine of stare decisis without some compelling justification." *Hilton v. South Carolina Pub. Ry. Comm'n*, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (emphasis added). *Cf. Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 421, 992 P.2d 93, 116 (2000) (stating that "*a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it*") (internal quotation marks and citations omitted)....

(Emphasis added.)

When we decided *Wilson*, the Legislature's intent to allow insureds the right to bring court action to contest denials of PIP benefits, as evidenced by the plain language of the statutes, was clear.[20] We concluded, however, that the PIP statutory scheme strongly suggested that only the provider, not the insured, was entitled to pursue PIP payments from the insurer.

Various developments, however, compel us to revisit *Wilson*. In this regard, although Act 198 of 2006 is not retrospective, it may still be instructive. Liberty Mutual argues that, although an insured contesting the amount of PIP benefits paid is now a real party in interest due to the amendment to HRS § 431:10C–308.5(e), the effect of Act 198 is limited by its own language to disputes between a provider and insurer over the amount of a charge and/or the use of a procedural code. It argues that PIP *denials* are still governed by our holding in *Wilson*. The Insureds, on the other hand, argue that Act 198 called into question this court's real party in interest analysis as to both fee disputes *and* PIP denials.

---

**20.** Both HRS § 431:10C–308.6(f), at issue in *Wilson*, and § 431:10C–314, at issue in *Gamata*, allowed for court review of PIP denials. Although § 431:10C–308.6 was repealed in 1997

along with the PRO scheme, *see* n. 4, *supra*, § 431:10C–314 remains in effect, but due to *Wilson* and *Gamata*, restricts insureds from pursuing court action for PIP disputes.

[redacted] Statutory analysis begins by examining the plain language of the statute at issue. *Zanakis–Pico v. Cutter Dodge, Inc.*, 98 Hawai'i 309, 316, 47 P.3d 1222, 1229 (2002). Where the language of the statute is plain and unambiguous, the court's only duty is to give effect to its plain and obvious meaning. *Allstate Ins. Co. v. Schmidt,* 104 Hawai'i 261, 265, 88 P.3d 196, 200 (2004).

[redacted] Courts may, however, look to legislative history, including committee reports, to aid in ascertaining legislative intent, or as a interpretive tool, when the language of the statute is ambiguous or produces an absurd or unjust result. *Estate of Roxas v. Marcos,* 121 Hawai'i 59, 68, 214 P.3d 598, 607 (2009) (emphasis added).

At first glance, the plain language of HRS § 431:10C–308.5(e), as amended by Act 198, appears to support Liberty Mutual's argument. Indeed, HRS § 431:10C–308.5 is entitled, "[l]imitation on charges." In amending subsection (e), however, the Act added a redundant phrase in the last sentence: "The provider, claimant, or insurer may submit any dispute involving the amount of a charge or the correct fee or procedure code to the commissioner, to arbitration, or to a court of competent jurisdiction." Before the amendment, subsection (e) already stated that "the provider, insurer, or claimant may submit the dispute [over the amount of a charge or the correct fee or procedure code to be used] to the commissioner, arbitration, or a court of competent jurisdiction." Moreover, the added last sentence now allows "any dispute" as compared to "the dispute" to be submitted. In addition, granting real party in interest status only to insureds contesting amounts of PIP benefits, but not to insureds contesting PIP denials, would produce an absurd or unjust result.[21]

Therefore, it is appropriate to review the legislative history of Act 198, in this context. In this regard, Conference Committee Report No. 128, is useful. It states:

The purpose of this measure is to streamline the process for adjusting fee charges for medical services provided under a motor vehicle insurance policy's personal injury protection provisions.

Specifically, this measure allows insurers to adjust fee charges to conform them to the applicable fee schedule without issuing formal denial notices. This measure also provides that fee adjustments constitute the acceptance of treatments and not the denials of benefits.

Your Committee on Conference finds that recent litigation over an insurer's practice of adjusting medical procedure codes provided to an insured under a motor vehicle insurance policy, paying the provider the undisputed amount billed, then seeking to negotiate with the provider over the disputed portion of the bill has revealed ambiguities in the current law. Pursuant to *Orthopedic Assoc. of Hawaii, Inc. v. Hawaiian Ins. & Guar. Co., Ltd.*, 109 Hawai'i 185 [124 P.3d 930] (2005), the Supreme Court ruled that in situations where the insurer disputes billing codes or billing amounts, but not the treatment provided, and pays the undisputed portion of the bill, the insurer is still required to issue a formal denial notice pursuant to section 431:10C–304(3)(B), Hawaii Revised Statutes. Your Committee on Conference further finds that, as a result of the Court's ruling in *Orthopedic Assoc. of Hawaii,* insurers are required to issue denial notices in the thousands, in triplicate, each month for billing discrepancies, even though the amount disputed may be as little as one dollar. The issuance of these denial notices has not only significantly increased the amount of paperwork required of insurers, but has also created a great deal of stress and concern for the insureds who are confused as to whether and why their treatments have been denied.

Your Committee on Conference believes that changes to the law are necessary to

21. Because we overrule *Wilson,* we do not need to decide whether Act 198 of 2006 overruled *Wilson* in its entirety, and not just with respect to disputes covered under HRS § 431:10C–308.5. "[A] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Hawaii Gov't Emps. Ass'n, AFSCME Local 152, AFL–CIO v. Lingle,* 124 Hawai'i 197, 208, 239 P.3d 1, 12 (2010) (citation omitted).

streamline the onerous process required by the Supreme Court and to clarify the legislative intent that treatment denials and payment disputes should be treated differently. *Your Committee on Conference further believes that an insured or claimant should not be denied the opportunity to contest an insurer's decision to dispute a provider's charges. In Wilson v. AIG Hawaii Ins. Co.,* 89 Hawai'i 45 [968 P.2d 647] (1998), *the Court held that the statutory scheme insulating claimants from personal liability for unpaid portions of medical bills reflected a legislative intent not to permit insureds to contest payment disputes, notwithstanding statutory language permitting any insured to contest such disputes. The law should provide a claimant with the ability to submit a dispute to the commission, arbitration, or a court, reflecting the legislative intent to allow claimants to contest fee disputes. Patients have a direct interest in proper payment to their doctors to maintain appropriate treatment and patient-doctor relationships. Your Committee on Conference finds that it is necessary to permit claimants to contest fee disputes to maintain the pool of doctors willing to treat accident patients, as many doctors have stopped accepting accident patients because of the Wilson case, making needed medical treatment unavailable to many patients. Accordingly, claimants, insurers, and providers should be statutorily afforded real party in interest status and standing to contest all fee disputes.*

2006 House Journal, at 1893, 2006 Senate Journal, at 966 (emphasis added).

Although the statutory language of Act 198 of 2006 is limited to disputes regarding amounts of PIP payments, its legislative history clearly expresses the Legislature's view that insureds should be real parties in interest to pursue all PIP disputes, not just disputes under HRS § 431:10C–308.5(e), whether through the Insurance Commissioner, arbitration, or a court.

In addition, after *Wilson,* insureds were denied court review of PIP denials except when the tort threshold had not been met, and providers were required to personally become party plaintiffs to pursue claims against insurance companies for denials of PIP benefits.

The consequences of *Wilson* were not limited to court review of PIP denials. Despite restricting court review,[22] *Wilson* and its progeny seemingly left insureds the statutory options of administrative review[23] or arbitration[24] to pursue PIP disputes. The Insurance Commissioner followed *Wilson,* however, and also denied insureds with PIP expenses above the tort threshold access to administrative review.[25]

Moreover, pursuant to *Gamata,* which followed *Wilson,* providers were required to reimburse insureds who advanced PIP payments while awaiting resolution of PIP payment disputes. Finally, and most importantly, as indicated in the legislative findings, due to *Wilson,* many doctors stopped accepting accident patients, making needed medical treatment unavailable to many.

▇▇ For these reasons, we are led to the conclusion that legislative clarification, "compelling justification," and "cogent reasons and inescapable logic" require us to overrule *Wilson.* Indeed, adherence to *Wilson* would result in "manifest injustice," as insureds with PIP expenses above the tort threshold

22. Although the statute at issue in *Wilson,* HRS § 431:10C–308.6(f) has been repealed, *see* n. 4, *supra,* HRS § 431:10C–314, at issue in *Gamata, see* n. 12, *supra,* remains in effect.

23. HRS § 431:10C–212.

24. HRS § 431:10C–213.

25. *See* text accompanying n. 16, and n. 16, *supra.* The record does not reflect whether insureds have been able to continue to resort to arbitration under HRS § 431:10C–213 to pursue claims for PIP denials. However, subsection (d) of that statute provides that "[a]ny fee or cost of the arbitrator shall be borne equally by the parties unless otherwise allocated by the arbitrator[,]" a factor that would appear to discourage insureds from pursuing this avenue.

Also, at oral argument, the Insurance Commissioner requested guidance on whether providers would have to be noticed or named should we uphold the ICA's judgment and hold insureds to be real parties in interest. Resolution of this question is inappropriate here because no party has argued or briefed it. *Lucas v. Liggett & Myers Tobacco Co.,* 51 Haw. 346, 350, 461 P.2d 140, 144 (1969).

are denied avenues to pursue their contractual rights. Accordingly, we overrule *Wilson*, and hold that insureds are real parties in interest in actions against insurers regarding PIP benefits.

## V. CONCLUSION

The ICA erred in affirming the circuit court's judgment overruling the Insurance Commissioner's Final Orders because Act 198 of 2006 was not retrospective, and our real party in interest holding of *Wilson* was still in effect. "Cogent reasons and inescapable logic," however, compel us to overrule *Wilson*. Therefore, we vacate the ICA's judgments on appeal and the circuit court's judgments, and remand these cases to the circuit court with instructions for the circuit court to, in turn, remand these cases back to the Insurance Division for proceedings consistent with this opinion.

