*** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 Electronically Filed
 Supreme Court
 SCWC-28314
 04-OCT-2011
 02:47 PM
 IN THE SUPREME COURT OF THE STATE OF HAWAI#I

 ---O0O---

 CHUNG MI AHN,
 Respondent/Claimant/Appellant/Appellee-Appellee,

 vs.

 LIBERTY MUTUAL FIRE INSURANCE COMPANY,
 Petitioner/Respondent/Appellee/Appellant-Cross-Appellee,

 and

 GORDON I. ITO,1 Insurance Commissioner,
 Department of Commerce and Consumer Affairs,
 Respondent/Appellee/Appellee-Cross-Appellant.
 (SCWC NO. 28314)
-----------------------------------------------------------------
 KEE SUN KIM,
 Respondent/Claimant/Appellant/Appellee-Appellee,

 vs.

 LIBERTY MUTUAL FIRE INSURANCE COMPANY,
 Petitioner/Respondent/Appellee/Appellant-Cross-Appellee,

 and

 GORDON I. ITO, Insurance Commissioner,
 Department of Commerce and Consumer Affairs,
 Respondent/Appellee/Appellee-Cross-Appellant.
 (SCWC NO. 28315)

 1
 During the pendency of this action, Gordon I. Ito (Ito or
Insurance Commissioner Ito) succeeded J.P. Schmidt (Schmidt, Insurance
Commissioner, or Insurance Commissioner Schmidt) as Insurance Commissioner.
Therefore, pursuant to Hawai#i Rules of Appellate Procedure (HRAP) Rule
43(c)(1) (2010), Ito has been substituted for Schmidt.
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
 (ICA NO. 28314 (CIV. N0. 05-1-2265) and
 ICA NO. 28315 (CIV. NO. 06-1-0994))

 OCTOBER 4, 2011

 NAKAYAMA, ACTING C.J., ACOBA, DUFFY, AND MCKENNA, JJ., AND
 CIRCUIT JUDGE CHANG, IN PLACE OF RECKTENWALD, C.J., RECUSED

 OPINION OF THE COURT BY MCKENNA, J.

I. SUMMARY

 In Wilson v. AIG Hawaii Ins. Co., 89 Hawai#i 45, 50-51, 968

P.2d 647, 652-53 (1998), we held that unless an insurer’s non-

payment of personal injury protection (PIP) benefits2 jeopardizes

an insured’s ability to reach the minimum amount of medical

expenses required to file a tort lawsuit,3 insureds are not “real

parties in interest” allowed to pursue lawsuits seeking payment

of PIP benefits to providers. Although a statute expressly gave

insureds the right to seek court review of PIP denials, we

concluded that insureds do not have legal rights under

 2
 PIP benefits are currently defined by Hawai#i Revised Statutes
(HRS) § 431:10C-103.5, and generally refer to expenses for treatment of
physical and psychological injuries caused by motor vehicle accidents. The
underlying facts in Wilson occurred before the Legislature’s 1997 overhaul of
the no-fault law, in which the Legislature removed PIP benefits from the
definition of no-fault benefits under HRS § 431:10C-103(10)(A), and created
the new section HRS § 431:10C-103.5. See generally 1997 Haw. Sess. Laws Act
251, §§ 2 and 13 at 520-25; see Wilson, 89 Hawai#i at 48-49, 968 P.2d. 650-51,
for the prior definition of “no-fault benefits,” which also included wage loss
and other benefits. The terms PIP benefits and no-fault benefits are used
interchangeably in this opinion.

 3
 This amount, which changes, is commonly referred to as the “tort
threshold.”

 -2-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

substantive law to enforce payment of PIP benefits to providers

See 89 Hawai#i at 48, 968 P.2d at 650. We also stated that

“preservation of the integrity of the therapeutic relationship

between physician and patient” was merely an “altruistic

concern,” because PIP benefit laws insulated an insured from the

billing and payment process. 89 Hawai#i at 50, 968 P.2d at 652.

 Due to developments after Wilson, “cogent reasons and

inescapable logic” compel us to overrule its holding, and we now

hold that insureds are real parties in interest in actions

against insurers regarding PIP benefits.

II. BACKGROUND OF THE LAW

 An explanation of Wilson and its progeny, as well as

of Act 198 of 2006, is provided for a better understanding of our

analysis.

 A. Wilson and Its Progeny

 1. Wilson v. AIG Hawaii Ins. Co.

 In Wilson, AIG Hawaii Insurance Company (AIG) denied a no-

fault claim for surgical treatment based on a peer review

organization (PRO) report concluding the treatment was neither

appropriate nor reasonable. 89 Hawai#i at 46, 968 P.2d at 648.

Wilson brought suit in the District Court of the First Circuit

(district court) based on the then existing PRO statute, HRS §

 -3-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

431:10C-308.6(f),4 which expressly provided that “any insured or

provider may . . . seek an administrative hearing, arbitration,

or court review of a denial of no-fault benefits based, in whole

or in part, upon a peer review organization determination.” Id.

(some emphasis in original).

 Despite the statute, AIG moved for summary judgment based on

arguments that (1) Wilson lacked standing to pursue payment of

medical bills to her provider; and (2) that the controversy was

moot because there was no effective remedy because Wilson bore no

liability under the law for payment of the provider’s services.

See id.

 We acknowledged that HRS § 431:10C-308.6(f) expressly gave

Wilson the right to seek court review of AIG’s denial of PIP

benefits, but noted her admission that she was “effectively

bringing the action for the benefit of her primary treating

physician.” 89 Hawai#i at 48, 968 P.2d at 650. We agreed with

the ICA that the issue was not whether Wilson had standing, but

whether she was a real party in interest pursuant to District

 4
 HRS § 431:10C-308.6(f) provided, in pertinent part:
 (f) An insurer, provider, or insured may request a
 reconsideration by the peer review organization of its
 initial determination . . . . Any insured or provider may,
 in addition to or in lieu of reconsideration, seek an
 administrative hearing, arbitration, or court review of a
 denial of no-fault benefits based, in whole or in part, upon
 a peer review organization determination.
(Emphasis added). HRS § 431:10C-308.6 was repealed in 1998. See 1997
Haw. Sess. Laws Act 251, § 59 at 551. The PRO system was repealed
because it had “become expensive and time consuming,” and had “resulted
in litigation between insureds and their insurance companies.” See H.
Stand. Comm. Rep. No. 250, in 1997 House Journal, at 1211.

 -4-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

Court Rules of Civil Procedure (DCRCP) Rule 17(a).5 89 Hawai#i

at 47-48, 968 P.2d at 649-50.

 DCRCP Rule 17(a) provided then, as it does now:

 (a) Real Party in Interest. Every action shall be
 prosecuted in the name of the real party in interest; except
 that (1) . . . a party authorized by statute may sue in such
 party’s own name without joining with such party the party
 for whose benefit the action is brought[.]

Because HRS § 431:10C-308.6(f) expressly gave Wilson the

right to pursue court action, based on the clear language of

DCRCP Rule 17(a), the ICA had deemed Wilson a real party in

interest.6

 Despite the language of DCRCP Rule 17(a), however, we stated

that the inquiry could not end there. See 89 Hawai#i at 48, 968

P.2d at 650. We stated, “to qualify as a real party in interest,

a party must also have a legal right under substantive law to

enforce the claim in question.” Id.

 We then discussed HRS §§ 431:10C-304(1)(A) and (1)(B),7

 5
 In discussing “real party in interest” analysis, we referred to
the ICA’s decision in Lagondino v. Maldonado, 7 Haw. App. 591, 789 P.2d 1129
(1990). See Wilson, 89 Hawai#i at 47-48, 968 P.2d at 649-50.

 6
 Wilson v. AIG Haw. Ins. Co., No. 20349, slip op. (App. Oct. 16,
1997) (depublished by Wilson, 89 Hawai#i at 51, 968 P.2d at 653).

 7
 When suit was commenced in Wilson, HRS §§ 431:10C-304(1)(A) and
(1)(B) read as follows:
 Obligation to pay no-fault benefits. Every no-fault
 insurer shall provide no-fault benefits for accidental harm
 as follows:
 (1) Except as otherwise provided in section 431:10C-
 305(d):
 (A) In the case of injury arising out of a motor
 vehicle accident, the insurer shall pay, without
 regard to fault, to the following persons who
 sustain accidental harm as a result of the

 -5-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

pursuant to which insurers are required to pay medical expenses

directly to providers. 89 Hawai#i at 48-49, 968 P.2d at 650-51.

We noted that under HRS § 431:10C-304(1), an insurer is obligated

to make direct payment to the insured only for wage loss,

expenses incurred as a result of accidental harm, funeral

 operation, maintenance or use of the vehicle, an
 amount equal to the no-fault benefits payable
 for wage loss and other expenses to that person
 under section 431:10C-103(10)(A)(iii) and (iv)
 as a result of the injury:
 (i) Any person, including the owner, operator,
 occupant, or user of the insured motor
 vehicle;
 (ii) Any pedestrian (including bicyclist); or
 (iii) Any user or operator of a moped as defined
 in section 249-1;
 (B) In the case of injury arising out of a motor
 vehicle accident, the insurer shall pay, without
 regard to fault, to a provider of services on
 behalf of the persons listed in item (1)(A)
 charges for services covered under section
 431:10C-103(10)(A)(i) and (ii)[.]
HRS § 431:10C-103(10)(A)(i) and (ii) related to medical and rehabilitation
expenses. In 1997, HRS § 431:10C-304 was amended and the language of HRS §
431:10C-304(1)(B) was inserted in HRS § 431:10C-304(1). See 1997 Haw. Sess.
Laws Act 251, § 41 at 538-39 (effective January 1, 1998). HRS § 431:10C-304
now reads, in pertinent part, as follows:
 Obligation to pay personal injury protection benefits.
 . . . Every personal injury protection insurer shall provide
 personal injury protection benefits for accidental harm as
 follows:
 (1) Except as otherwise provided in section 431:10C-
 305(d), in the case of injury arising out of a
 motor vehicle accident, the insurer shall pay,
 without regard to fault, to the provider of
 services on behalf of the following persons who
 sustain accidental harm as a result of the
 operation, maintenance, or use of the vehicle,
 an amount equal to the personal injury
 protection benefits as defined in section
 431:10C-103.5(a) payable for expenses to that
 person as a result of the injury:
 (A) Any person, including the owner, operator,
 occupant, or user of the insured motor
 vehicle;
 (B) Any pedestrian (including a bicyclist); or
 (C) Any user or operator of a moped as defined
 in section 249-1; . . .
HRS § 431:10C-304 (2000). No substantive changes were made to HRS § 431:10C-
304 (1)(A)-(C) when HRS Chapter 431:10C was amended in 1998 and 2000.

 -6-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

services, and attorney’s fees and costs.8 See 89 Hawai#i at 49,

968 P.2d at 651. We pointed out that H.R.S. § 431:10C-304(1)

does not confer upon an insured the right to receive payment of

medical benefits on behalf of one’s provider, but rather

designates billing and payment of medical expenses to flow

between insurer and provider. See id. We noted that the insured

plays no role in this process. See id. We also cited HRS §§

431:10C-308.5(e)9 and 431:10C-308.6(j)(1993),10 which prohibited a

provider from collecting payment of medical services from an

insured. See id.

 We concluded, “viewing these statutes in pari materia,[11]

. . . it is clear that the no-fault law does not allow an insured

to enforce a claim for unpaid medical expenses against an insurer

on behalf of his or her provider[;]” rather, we stated, “[t]he

no-fault statutory scheme strongly suggests that the provider,

not the insured, is entitled to pursue payment from the insurer

for the cost of unreimbursed medical services to the insured.”

89 Hawai#i at 49-50, 968 P.2d at 651-52. Accordingly, we held

 8
 These provisions have been moved from HRS § 431:10C-304(1), and
HRS §§ 431:10C-302(2), (4), and (5) now provide optional coverage for wage
loss, funeral expenses, and other expenses. See HRS § 431:10C-302 (1998).
Attorney’s fees are now addressed in HRS § 431:10C-211.

 9
 Now HRS § 431:10C-308.5(f).

 10
 Repealed in 1998. See 1997 Haw. Sess. Laws Act 251, § 59 at 551.

 11
 HRS § 1-16 provides, as it did in 1998:
 Laws in pari materia. Laws in pari materia, or upon
 the same subject matter, shall be construed with reference
 to each other. What is clear in one statute may be called
 in aid to explain what is doubtful in another.

 -7-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

that Wilson was not a real party in interest with respect to her

claim against AIG for no-fault benefits to satisfy her provider’s

unpaid bill. See 89 Hawai#i at 50, 968 P.2d at 652.

 In so holding, we reversed the ICA’s holding that Wilson was

a real party in interest. See 89 Hawai#i at 51, 968 P.2d at 653.

We opined that the ICA’s concerns regarding the insured’s

continuing relationship with the provider, and her personal

interest in having the insurer pay the provider, were merely

altruistic. See 89 Hawai#i at 50, 968 P.2d at 652.

 2. Gamata v. Allstate Ins. Co.
 Wilson was decided while the appeal in Gamata v. Allstate

Ins. Co., 90 Hawai#i 213, 978 P.2d 179 (App. 1999) was pending.

In Gamata, Allstate Insurance Company (Allstate) denied continued

PIP benefits based on a medical opinion that the insured’s

continued complaints were not caused by the accident. See 90

Hawai#i at 215, 978 P.2d at 181. Gamata brought suit pursuant to

HRS § 431:10C-31412 in district court, claiming that Allstate

violated its statutory and contractual duties to provide no-fault

benefits. See id. After filing his complaint, Gamata received

and paid for the contested treatment despite Allstate’s denial.

See 90 Hawai#i at 214, 978 P.2d at 180.

 The ICA vacated and remanded the district court’s ruling

 12
 HRS § 431:10C-314 provides, as it did in 1999:
 Jurisdiction. Any person may bring suit for breach of
 any contractual obligation assumed by an insurer under a
 policy of insurance containing such mandatory or optional
 provisions in any state court of competent jurisdiction.

 -8-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

affirming Allstate’s denial because the court had applied an

incorrect legal standard.13 90 Hawai#i at 220-22, 978 P.2d at

186-88. Due to Wilson, however, the ICA ruled that any payments

made by Gamata to the provider must, “as a logical consequence,

be returned to [Gamata].” 14 90 Hawai#i at 224, 978 P.2d at 190.

In addition, the ICA ruled that if the provider sought

reimbursement, he had to become a party plaintiff. See id.

 3. Dacanay v. Liberty Mut. Ins. Co.

 In Dacanay v. Liberty Mut. Ins. Co., 108 Hawai#i 393, 396,

120 P.3d 1128, 1131 (App. 2005), Dacanay initiated proceedings

with the Insurance Commissioner pursuant to HRS § 431:10C-212,

after Liberty Mutual Insurance Co. (Liberty Mutual) refused to

pay several claims for PIP benefits submitted by providers who

had treated him after an automobile accident. Liberty Mutual

then reached settlement with the providers. See 108 Hawai#i at

395, 120 P.3d at 1130. When Dacanay requested attorney’s fees

and costs, however, Liberty Mutual asserted, in light of Wilson

and Gamata, that Dacanay was not a real party in interest and was

therefore not entitled to an award of attorney’s fees and costs.

See 108 Hawai#i at 396, 120 P.3d at 1131.

 13
 The district court had affirmed Allstate’s denial on the basis
that it considered the treatment “palliative” rather than “curative,” not
“whether the expenses were appropriate, reasonable, and necessarily incurred.”
Gamata, 90 Hawai#i at 220-22, 978 P.2d at 186-88.

 14
 The ICA also cited to this court’s statement in Gov’t Emp. Ins.
Co. v. Hyman, 90 Hawai#i 1, 7, 975 P.2d 211, 217 (1999) that “the insured has
a right to receive treatment of injuries, [while] the provider has a right to
receive payment for treatment rendered.” (Brackets in original.)

 -9-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 The ICA declined to address the real party in interest

issue, deeming its resolution unnecessary. See 108 Hawai#i at

399, 120 P.3d at 1134. Based on its review of the record, the

ICA concluded that Liberty Mutual had waived any objections to

Dacanay’s status as a real party in interest.15 See id.

 The ICA stated in dicta, however, that unlike Wilson and

Gamata, which involved lawsuits filed in district court, Dacanay

stemmed from an administrative proceeding, and thus, DCRCP Rule

17 did not appear applicable.16 See id.

 B. Act 198 of 2006

 1. Circumstances Leading to Act 198

 15
 The circumstances the ICA considered when concluding that Liberty
Mutual had waived any objection included that Liberty Mutual (1) addressed its
denial of Dacanay’s health providers’ claims directly to Dacanay and
specifically alerted her to the option of seeking an administrative review, if
she wished to challenge the denials; (2) did not object to Dacanay’s status as
a real party in interest when she sought review by the Commissioner; (3)
settled the claims with Dacanay’s providers; (4) stipulated with Dacanay that
the dispute relating to the denials had been resolved; (5) stipulated to the
dismissal of Dacanay’s claims before the Commissioner for the denied PIP
benefits; and (6) only questioned Dacanay’s status as a real party in interest
after she sought an award of attorney’s fees and costs and it was too late for
her to substitute her health care providers as the real parties to her case.
See 108 Hawai#i at 400, 120 P.3d at 1135.

 16
 Because we overrule Wilson, we do not address a question raised by
the insureds in these cases but not addressed by the ICA: whether the real
party interest holding, which is based on DCRCP Rule 17(a), is applicable to
administrative proceedings. One of the purposes of administrative remedies is
to enable parties to resolve disputes in a less cumbersome and expensive
manner than normally encountered in a trial in court. 2 Am. Jur. 2d
Administrative Law § 4. Based on Hawai#i Administrative Rules (HAR) § 16-201-
1, however, which provides that “[w]henever this chapter is silent on a
matter, the authority or hearings officer may refer to the Hawaii Rules of
Civil Procedure for guidance,” Insurance Commissioner Schmidt’s Final Orders
applied Wilson’s real party in interest holding to these insureds. Although
we do not decide the issue, we note that “[i]t is axiomatic that an
administrative rule cannot contradict or conflict with the statute it attempts
to implement[,]" Kaleikini v. Thielen, 124 Hawai#i 1, 33, 237 P.3d 1067, 1099
(2010) (Acoba, J., concurring) (citation omitted), and HRS § 431:10C-212
expressly gives insureds the right seek to administrative review.

 -10-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 Act 198 was triggered by our holding in Orthopedic Assocs.

of Haw., Inc. v. Haw. Ins. & Guar. Co., Ltd., 109 Hawai#i 185,

124 P.3d 930 (2005). This case involved the “down-coding” of

bills submitted by providers to PIP insurers:

 Between January 1, 1993 and December 31, 1999, each of the
 providers submitted bills to one or more of the insurers for
 non-emergency treatments rendered to thousands of personal
 injury protection (PIP) insureds allegedly injured in motor
 vehicle accidents. The insurers were obligated to pay
 appropriate PIP benefits under HRS chapter 431:10C on behalf
 of their insureds. . . . The insurers, however, rather than
 pay the bills as submitted, or deny the claim (in whole or
 in part), altered the treatment code because they believed
 that, "based on the available information, the services
 rendered appear to be best described by [a different medical
 treatment] code." The resulting effect of changing the
 treatment codes was a reduction in the payment for the
 service rendered, which the parties generally refer to as
 "down-coding." The insurers, thus, (1) paid the bills
 pursuant to the adjusted treatment codes and (2) offered to
 negotiate with the providers as to the unpaid portions.

 109 Hawai#i at 191, 124 P.3d at 936 (footnote omitted).

 We held:

 In light of the unambiguous mandatory language of HRS §
 431:10C-304(3)(B), an insurer is required to provide written
 notice of its denial--in whole or in part--of the claim for
 benefits. Written notice to the claimant is required where
 the denial or partial denial relates to the treatment
 service and/or the charges therefor. Where the denial or
 partial denial involves treatment services, the insurer must
 also provide written notice to the provider.

109 Hawai#i at 196, 124 P.3d at 941.

 Before Orthopedic Associates, HRS § 431:10C-304(3)(B), which

requires that an insurer mail denial notices in triplicate to the

claimant, and mail another copy to the provider, was followed by

insurers only for complete denials of a provider’s PIP billing.

This holding, however, required that such notices be mailed any

 -11-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

time an insurer partially denied a provider’s PIP billing.

 2. Text of Act 198 of 2006

 The Legislature responded to Orthopedic Associates through

Act 198 of 2006. Act 198 provides as follows:

 SECTION 1. The legislature notes that section 431:10C-
 308.5, Hawaii Revised Statutes, limits the charges for and
 frequency of medical treatment covered by personal injury
 protection (PIP) benefits. In accordance with this
 limitation on charges, the motor vehicle insurer has an
 obligation to limit payment of the insured's benefits for
 treatment.

 The legislature finds that, as a result of the Hawaii
 Supreme Court's ruling in Orthopedic Associates of Hawaii,
 Inc. v. Hawaiian Insurance & Guaranty Co., Ltd., No. 24634,
 slip. op. (Dec. 7, 2005), insurers have implemented a
 process of issuing denials of benefits on all payments that
 are less than the amount billed. Some of the larger insurers
 are issuing several thousand denials each month. Copies of
 these denials are given to both the provider and the
 insured. This has prompted many calls from insureds who do
 not understand the process and are concerned that the
 insurer might be denying them access to medical treatment.

 This Act is intended to clarify the process to be
 followed in any billing adjustment or dispute where an
 insurer receives and does not dispute the treatment rendered
 but finds the billing to exceed the permissible charges.
 This Act is not intended to affect the merits of the amount
 billed or the amount owed under PIP. Specifically, this Act
 clarifies that any adjustments to payment of the amount
 billed is an acceptance of the treatment and not a denial of
 benefit. Therefore, section 431:10C-304(3), which requires a
 written denial of benefit, is not applicable to an
 adjustment to the amount payable under PIP benefits. Rather
 than issue a denial, this Act clarifies that the insurer's
 obligation is to "pay all undisputed charges" and "negotiate
 in good faith with the provider on the disputed charges."
 SECTION 2. Section 431:10C-308.5, Hawaii Revised
 Statutes, is amended by amending subsection (e) to read as
 follows:
 "(e) In the event of a dispute between the provider
 and the insurer over the amount of a charge or the correct
 fee or procedure code to be used under the workers'
 compensation supplemental medical fee schedule, the insurer
 shall:
 (1) Pay all undisputed charges within thirty days
 after the insurer has received reasonable proof of
 the fact and amount of benefits accrued and demand
 for payment thereof; and
 (2) Negotiate in good faith with the provider on the
 disputed charges for a period up to sixty days

 -12-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 after the insurer has received reasonable proof of
 the fact and amount of benefits accrued and demand
 for payment thereof.
 If the provider and the insurer are unable to resolve
 the dispute[,] after a period of sixty days pursuant to
 paragraph (2), the provider, insurer, or claimant may submit
 the dispute to the commissioner, arbitration, or court of
 competent jurisdiction. The parties shall include
 documentation of the efforts of the insurer and the provider
 to reach a negotiated resolution of the dispute. This
 section shall not be subject to the requirements of section
 431:10C-304(3) with respect to all disputes about the amount
 of a charge or the correct fee and procedure code to be used
 under the workers' compensation supplemental medical fee
 schedule. An insurer who disputes the amount of a charge or
 the correct fee or procedure code under this section shall
 not be deemed to have denied a claim for benefits under
 section 431:10C-304(3); provided that the insurer shall pay
 what the insurer believes is the amount owed and shall
 furnish a written explanation of any adjustments to the
 provider and to the claimant at no charge, if requested. The
 provider, claimant, or insurer may submit any dispute
 involving the amount of a charge or the correct fee or
 procedure code to the commissioner, to arbitration, or to a
 court of competent jurisdiction."
 SECTION 3. Statutory material to be repealed is
 bracketed and stricken. New statutory material is
 underscored.
 SECTION 4. This Act shall take effect upon its
 approval.

2006 Haw. Sess. Laws Act 198, §§ 1-4 at 840-41 (effective June

14, 2006).

III. BACKGROUND OF THESE CONSOLIDATED CASES

 A. Administrative Proceedings

 These cases arose from Liberty Mutual Fire Insurance

Company’s (Liberty Mutual) denial of PIP benefits to Chung Mi Ahn

(Ahn) and Kee Sun Kim (Kim) (collectively Insureds) for

treatments after motor vehicle accidents in 2004 and 2005. After

the denials, Insureds each sought administrative reviews with the

Insurance Division of the Department of Commerce and Consumer

Affairs (DCCA) pursuant to HRS § 431:10C-212, which allows

 -13-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

insureds to seek administrative review of PIP denials.

 Based upon our holding in Wilson, Liberty Mutual filed motions

for summary judgment, contending that Insureds were not real

parties in interest to pursue PIP benefits, and that the claims

had to be pursued directly by the providers. The Insurance

Commissioner’s Final Orders granting the motions were filed on

November 23, 2005, and May 12, 2006, respectively.

 B. Circuit Court Appeal

 Insureds appealed to the Circuit Court of the First Circuit

(circuit court) pursuant to HRS § 91-14. After a consolidated

hearing in October of 2006, the circuit court concluded that Act

198 of 2006, effective June 14, 2006, had “legislatively

overruled” Wilson. The circuit court concluded that Insureds

were real parties in interest to challenge Liberty Mutual’s

denials despite having reached the tort threshold.

 C. ICA Appeal

 Both Liberty Mutual and the Insurance Commissioner appealed

the circuit court’s ruling to the ICA. In a published opinion in

Kim v. Liberty Mut. Fire Ins. Co., 124 Hawai#i 415, 416, 245 P.3d

488, 489 (App. 2010), the ICA upheld the circuit court, stating:

 In this appeal, we must determine the impact that Act 198
 and its legislative history have on Wilson v. AIG’s real-
 party-in-interest analysis. We conclude that the
 Legislature, through Act 198 and its accompanying
 legislative history, has clarified its intent and the nature
 of an insured claimant’s interest in enforcing his or her
 medical provider’s claim for payment, such that Kim
 qualifies as a real party in interest. Accordingly, we hold
 that Kim is a real party in interest and is entitled to
 pursue her administrative action which challenged Liberty

 -14-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 Mutual’s refusal to pay Kim’s medical provider for the
 acupuncture treatments provided to Kim.

The ICA analyzed our decision in Wilson, Act 198 of 2006, and the

legislative history of Act 198 in reaching this conclusion. See

generally 124 Hawai#i at 418-24, 245 P.3d at 491-97.

 The ICA then ruled in favor of Ahn through a summary

disposition order based on its opinion in Kim. See Ahn v.

Liberty Mut. Fire Ins. Co., No. 28314 (App. Jan. 25, 2011) (SDO).

 D. Certiorari Applications

 Liberty Mutual filed applications for writs of certiorari in

both cases.17 Liberty Mutual argues the ICA gravely erred in

concluding that HRS § 431:10C-308.5(e), as amended by Act 198 of

2006, conferred real party in interest status on Insureds. It

argues that the statute governs fee disputes, not complete

denials, and that the ICA’s decision conflicts with our holding

in Wilson. We accepted certiorari and consolidated the cases for

oral argument and disposition.

IV. DISCUSSION

 A. Act 198 of 2006 is not retrospective; therefore, the
 ICA erred in affirming the circuit court’s reversal of
 the Insurance Commissioner’s Final Orders

 “Review of a decision made by a court upon its review of an

 17
 Although Insurance Commissioner Schmidt appealed the circuit
court’s consolidated decision to the ICA, Insurance Commissioner Ito did not
file certiorari applications or responses, and at oral argument, counsel
stated that Ito defers to our decision on the real party in interest issue.

 -15-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

administrative decision is a secondary appeal.” Brescia v. North

Shore Ohana, 115 Hawai#i 477, 491, 168 P.3d 929, 943

(2007)(citations omitted). The standard of review is one in

which this court must determine whether the court under review,

in this case the ICA, was right or wrong in its decision. See

id. (citation omitted). The standards as set forth in HRS §

91-14(g) (1993) are applied to the agency's decision. See id.

HRS § 91-14(g) provides:

 (g) Upon review of the record the court may affirm the
 decision of the agency or remand the case with instructions
 for further proceedings; or it may reverse or modify the
 decision and order if the substantial rights of the
 petitioners may have been prejudiced because the
 administrative findings, conclusions, decisions, or orders
 are:

 ....

 (4) Affected by other error of law[.]

Therefore, the ICA’s conclusion regarding the impact of Act 198

on our holding in Wilson is a question of law reviewed under the

right/wrong standard of review. We now address whether the ICA’s

conclusion was right or wrong.

 Article VI, section 7 of the Hawai#i Constitution provides

that the "supreme court shall have power to promulgate rules

. . . in all civil . . . cases for all courts relating to . . .

procedure . . . , which shall have the force and effect of law."

Wilson interpreted a rule of civil procedure inconsistently with

a prior act of the legislature, HRS § 431:10C-308.6(f),18 which

 18
 See n.4, supra.

 -16-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

provided that an insured could seek court review of a PIP denial.

Our procedural rule, DCRCP Rule 17(a), was actually consistent

with the statute, and provided that a party given a statutory

right of action is a real party in interest. We interpreted the

rule in the context of the no-fault statutory scheme, however,

and concluded that Wilson was not a real party in interest. In

general, when a conflict between two laws is irreconcilable, the

later enactment governs. See 73 Am. Jur. 2d Statutes § 169.

Therefore, Wilson’s holding prevailed over the statute.

 In these consolidated cases, the Insurance Commissioner’s

Final Orders were issued well before the June 14, 2006 effective

date of Act 198 of 2006. Assuming Wilson’s interest holding

applied to administrative agencies,19 the Insurance Commissioner

was required to follow it. Although the circuit court’s agency

appeal hearing took place in October 2006, after the effective

date of Act 198, pursuant to HRS § 91-14(g), the circuit court

sat as an appellate court reviewing an agency decision, and was

ruling on whether the Insurance Commissioner’s Final Orders were

correct under the law at the time of issuance. Likewise, the ICA

was then reviewing whether the circuit court’s decision was

correct under the law.

 Act 198 of 2006, however, was an enactment of the

Legislature after Wilson. If, as concluded by the circuit court

and the ICA, Act 198 conferred real party in interest on the

 19
 See n. 16, supra.

 -17-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

Insureds, the Act would have had to have retrospective effect to

be of benefit to these Insureds.

 HRS § 1-3 governs whether a legislative enactment has

retrospective effect, and provides:

 §1-3 Laws not retrospective. No law has any
 retrospective operation, unless otherwise expressed or
 obviously intended.

Although the Legislature could have expressed its intent to give

Act 198 retrospective application, as noted above, Section 4 of

Act 198 of 2006 states that “(t)his Act shall take effect upon

its approval.” Therefore, the Act does not express an intent to

have retrospective application.

 The parties agreed that the Act had retrospective effect,

but party agreements on questions of law are not binding on a

court. See Beclar Corp. v. Young, 7 Haw. App. 183, 190, 750 P.2d

934, 938 (App. 1988) (citation omitted); see also State v.

Tangalin, 66 Haw. 100, 101, 657 P.2d 1025, 1026 (1983) (“[I]t is

well established that matters affecting the public interest

cannot be made the subject of stipulation so as to control the

court's action with respect thereto.") (Citation omitted.)

 Therefore, Act 198 of 2006 was not effective until June 14,

2006, after the Insurance Commissioner’s Final Orders.

Accordingly, the ICA erred in affirming the judgment of the

circuit court reversing the Commissioner’s Final Orders on the

basis of Act 198 of 2006.

 -18-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

B. Wilson is overruled

 Although the ICA erred in affirming the circuit court, it

correctly analyzed Act 198 of 2006 and its legislative history,

which expounded upon the nature of an insured’s interest in

pursuing PIP benefits. Act 198 of 2006 and these consolidated

cases provide occasion for us to revisit our holding in Wilson.

 We do not lightly overrule precedent. As we stated in State

v. Garcia, 96 Hawai#i 200, 205-06, 29 P.3d 919, 924-25 (2001):

 . . . The "policy of courts to stand by precedent and not to
 disturb settled points" is referred to as the doctrine of
 stare decisis, id. at 1406, and operates "as a principle of
 self-restraint . . . with respect to the overruling of prior
 decisions." Robinson v. Ariyoshi, 65 Haw. 641, 653 n.10,
 658 P.2d 287, 297 n.10 (1982). . . . The benefit of stare
 decisis is that it "furnishes a clear guide for the conduct
 of individuals, to enable them to plan their affairs with
 assurance against untoward surprise; . . . eliminates the
 need to relitigate every relevant proposition in every case;
 and . . . maintains public faith in the judiciary as a
 source of impersonal and reasoned judgments." Id. (citing
 Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403, 26
 L. Ed. 2d 339, 90 S. Ct. 1772 (1970)).

 While "there is no necessity or sound legal reason to
 perpetuate an error under the doctrine of stare decisis[,]"
 id. (internal quotation marks and citation omitted), we
 agree with the proposition expressed by the United States
 Supreme Court that a court should "not depart from the
 doctrine of stare decisis without some compelling
 justification." Hilton v. South Carolina Pub. Ry. Comm’n,
 502 U.S. 197, 202, 116 L.Ed. 2d 560, 112 S. Ct. 560 (1991)
 (emphasis added). Cf. Dairy Road Partners v. Island Ins.
 Co., Ltd., 92 Hawai#i 398, 421, 992 P.2d 93, 116 (2000)
 (stating that "a court should not overrule its earlier
 decisions unless the most cogent reasons and inescapable
 logic require it") (internal quotation marks and citations
 omitted)). . . .

(Emphasis added.)

 When we decided Wilson, the Legislature’s intent to allow

insureds the right to bring court action to contest denials of

PIP benefits, as evidenced by the plain language of the statutes,

 -19-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

was clear.20 We concluded, however, that the PIP statutory

scheme strongly suggested that only the provider, not the

insured, was entitled to pursue PIP payments from the insurer.

 Various developments, however, compel us to revisit Wilson.

In this regard, although Act 198 of 2006 is not retrospective, it

may still be instructive. Liberty Mutual argues that, although

an insured contesting the amount of PIP benefits paid is now a

real party in interest due to the amendment to HRS § 431:10C-

308.5(e), the effect of Act 198 is limited by its own language to

disputes between a provider and insurer over the amount of a

charge and/or the use of a procedural code. It argues that PIP

denials are still governed by our holding in Wilson. The

Insureds, on the other hand, argue that Act 198 called into

question this court’s real party in interest analysis as to both

fee disputes and PIP denials.

 Statutory analysis begins by examining the plain language of

the statute at issue. Zanakis-Pico v. Cutter Dodge, Inc., 98

Hawai#i 309, 316, 47 P.3d 1222, 1229 (2002). Where the language

of the statute is plain and unambiguous, the court’s only duty is

to give effect to its plain and obvious meaning. Allstate Ins.

Co. v. Schmidt, 104 Hawai#i 261, 265, 88 P.3d 196, 200 (2004).

 Courts may, however, look to legislative history, including

 20
 Both HRS § 431:10C-308.6(f), at issue in Wilson, and § 431:10C-
314, at issue in Gamata, allowed for court review of PIP denials. Although §
431:10C-308.6 was repealed in 1997 along with the PRO scheme, see n. 4, supra,
§ 431:10C-314 remains in effect, but due to Wilson and Gamata, restricts
insureds from pursuing court action for PIP disputes.

 -20-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

committee reports, to aid in ascertaining legislative intent, or

as a interpretive tool, when the language of the statute is

ambiguous or produces an absurd or unjust result. Estate of

Roxas v. Marcos, 121 Hawai#i 59, 68, 214 P.3d 598, 607 (2009)

(emphasis added).

 At first glance, the plain language of HRS § 431:10C-

308.5(e), as amended by Act 198, appears to support Liberty

Mutual’s argument. Indeed, HRS § 431:10C-308.5 is entitled,

“[l]imitation on charges.” In amending subsection (e), however,

the Act added a redundant phrase in the last sentence: “The

provider, claimant, or insurer may submit any dispute involving

the amount of a charge or the correct fee or procedure code to

the commissioner, to arbitration, or to a court of competent

jurisdiction.” Before the amendment, subsection (e) already

stated that “the provider, insurer, or claimant may submit the

dispute [over the amount of a charge or the correct fee or

procedure code to be used] to the commissioner, arbitration, or a

court of competent jurisdiction.” Moreover, the added last

sentence now allows “any dispute” as compared to “the dispute” to

be submitted. In addition, granting real party in interest

status only to insureds contesting amounts of PIP benefits, but

not to insureds contesting PIP denials, would produce an absurd

or unjust result.21

 21
 Because we overrule Wilson, we do not need to decide whether Act
198 of 2006 overruled Wilson in its entirety, and not just with respect to
disputes covered under HRS § 431:10C-308.5. "[A] fundamental and longstanding

 -21-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 Therefore, it is appropriate to review the legislative

history of Act 198, in this context. In this regard, Conference

Committee Report No. 128, is useful. It states:

 The purpose of this measure is to streamline the process
 for adjusting fee charges for medical services provided
 under a motor vehicle insurance policy's personal injury
 protection provisions.
 Specifically, this measure allows insurers to adjust fee
 charges to conform them to the applicable fee schedule
 without issuing formal denial notices. This measure also
 provides that fee adjustments constitute the acceptance of
 treatments and not the denials of benefits.
 Your Committee on Conference finds that recent litigation
 over an insurer's practice of adjusting medical procedure
 codes provided to an insured under a motor vehicle insurance
 policy, paying the provider the undisputed amount billed,
 then seeking to negotiate with the provider over the
 disputed portion of the bill has revealed ambiguities in the
 current law. Pursuant to Orthopedic Assoc. of Hawaii, Inc.
 v. Hawaiian Ins. & Guar. Co., Ltd., 109 Hawaii 185 (2005),
 the Supreme Court ruled that in situations where the insurer
 disputes billing codes or billing amounts, but not the
 treatment provided, and pays the undisputed portion of the
 bill, the insurer is still required to issue a formal denial
 notice pursuant to section 431:10C-304(3)(B), Hawaii Revised
 Statutes. Your Committee on Conference further finds that,
 as a result of the Court's ruling in Orthopedic Assoc. of
 Hawaii, insurers are required to issue denial notices in the
 thousands, in triplicate, each month for billing
 discrepancies, even though the amount disputed may be as
 little as one dollar. The issuance of these denial notices
 has not only significantly increased the amount of paperwork
 required of insurers, but has also created a great deal of
 stress and concern for the insureds who are confused as to
 whether and why their treatments have been denied.
 Your Committee on Conference believes that changes to the
 law are necessary to streamline the onerous process required
 by the Supreme Court and to clarify the legislative intent
 that treatment denials and payment disputes should be
 treated differently. Your Committee on Conference further
 believes that an insured or claimant should not be denied
 the opportunity to contest an insurer's decision to dispute
 a provider's charges. In Wilson v. AIG Hawaii Ins. Co., 89
 Hawaii 45 (1998), the Court held that the statutory scheme
 insulating claimants from personal liability for unpaid
 portions of medical bills reflected a legislative intent not
 to permit insureds to contest payment disputes,
 notwithstanding statutory language permitting any insured to
 contest such disputes. The law should provide a claimant

principle of judicial restraint requires that courts avoid reaching
constitutional questions in advance of the necessity of deciding them."
Hawai#i Gov’t Emps. Ass'n, AFSCME Local 152, AFL-CIO v. Lingle, 124 Hawai#i
197, 208, 239 P.3d 1, 12 (2010) (citation omitted).

 -22-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

 with the ability to submit a dispute to the commission,
 arbitration, or a court, reflecting the legislative intent
 to allow claimants to contest fee disputes. Patients have a
 direct interest in proper payment to their doctors to
 maintain appropriate treatment and patient-doctor
 relationships. Your Committee on Conference finds that it is
 necessary to permit claimants to contest fee disputes to
 maintain the pool of doctors willing to treat accident
 patients, as many doctors have stopped accepting accident
 patients because of the Wilson case, making needed medical
 treatment unavailable to many patients. Accordingly,
 claimants, insurers, and providers should be statutorily
 afforded real party in interest status and standing to
 contest all fee disputes.

2006 House Journal, at 1893, 2006 Senate Journal, at 966

(emphasis added).

 Although the statutory language of Act 198 of 2006 is

limited to disputes regarding amounts of PIP payments, its

legislative history clearly expresses the Legislature’s view that

insureds should be real parties in interest to pursue all PIP

disputes, not just disputes under HRS § 431:10C-308.5(e), whether

through the Insurance Commissioner, arbitration, or a court.

 In addition, after Wilson, insureds were denied court review

of PIP denials except when the tort threshold had not been met,

and providers were required to personally become party plaintiffs

to pursue claims against insurance companies for denials of PIP

benefits.

 The consequences of Wilson were not limited to court review

of PIP denials. Despite restricting court review,22 Wilson and

its progeny seemingly left insureds the statutory options of

 22
 Although the statute at issue in Wilson, HRS § 431:10C-308.6(f)
has been repealed, see n. 4, supra, HRS § 431:10C-314, at issue in Gamata, see
n.12, supra, remains in effect.

 -23-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

administrative review23 or arbitration24 to pursue PIP disputes.

The Insurance Commissioner followed Wilson, however, and also

denied insureds with PIP expenses above the tort threshold access

to administrative review.25

 Moreover, pursuant to Gamata, which followed Wilson,

providers were required to reimburse insureds who advanced PIP

payments while awaiting resolution of PIP payment disputes.

Finally, and most importantly, as indicated in the legislative

findings, due to Wilson, many doctors stopped accepting accident

patients, making needed medical treatment unavailable to many.

 For these reasons, we are led to the conclusion that

legislative clarification, “compelling justification,” and

“cogent reasons and inescapable logic” require us to overrule

Wilson. Indeed, adherence to Wilson would result in “manifest

injustice,” as insureds with PIP expenses above the tort

threshold are denied avenues to pursue their contractual rights.

 23
 HRS § 431:10C-212.

 24
 HRS § 431:10C-213.

 25
 See text accompanying n. 16, and n. 16, supra. The record does
not reflect whether insureds have been able to continue to resort to
arbitration under HRS § 431:10C-213 to pursue claims for PIP denials.
However, subsection (d) of that statute provides that “[a]ny fee or cost of
the arbitrator shall be borne equally by the parties unless otherwise
allocated by the arbitrator[,]” a factor that would appear to discourage
insureds from pursuing this avenue.

 Also, at oral argument, the Insurance Commissioner requested guidance on
whether providers would have to be noticed or named should we uphold the ICA’s
judgment and hold insureds to be real parties in interest. Resolution of this
question is inappropriate here because no party has argued or briefed it.
Lucas v. Liggett & Myers Tobacco Co., 51 Haw. 346, 350, 461 P.2d 140, 144
(1969).

 -24-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

Accordingly, we overrule Wilson, and hold that insureds are real

parties in interest in actions against insurers regarding PIP

benefits.

V. CONCLUSION

 The ICA erred in affirming the circuit court’s judgment

overruling the Insurance Commissioner’s Final Orders because Act

198 of 2006 was not retrospective, and our real party in interest

holding of Wilson was still in effect. “Cogent reasons and

inescapable logic,” however, compel us to overrule Wilson.

Therefore, we vacate the ICA’s judgments on appeal and the

circuit court’s judgments, and remand these cases to the circuit

court with instructions for the circuit court to, in turn, remand

these cases back to the Insurance Division for proceedings

consistent with this opinion.

James H. Monma of Matsui, Chung /s/ Paula A. Nakayama
 & Ikehara (Randall Y.S. Chung
 of Matsui, Chung & Ikehara /s/ Simeon R. Acoba, Jr.
 with him on the briefs) for
 Petitioner/Respondent/Appellee /s/ James E. Duffy, Jr.
 /Appellant-Cross-Appellee
 Liberty Mutual Fire Insurance /s/ Sabrina S. McKenna
 Company
 /s/ Gary W.B. Chang
Melvin Y. Agena of The Law
 Offices of Melvin Y. Agena
 (Andrew A. Agard of The
 Andrew A. Agard Law Office
 with him on the briefs) for
 Chung Mi Ahn and Kee Sun Kim
 Respondents/Claimants/Appellants
 /Appellees-Appellees

Elmira K.L. Tsang, Deputy
 Attorney General, State of
 Hawai#i (David A. Webber and
 Deborah Day Emerson, Deputy

 -25-
 *** FOR PUBLICATION IN W EST’S HAW AII REPORTS AND PACIFIC REPORTER ***

Attorneys General, State of
Hawai#i, on the briefs)
for Respondent/Respondent/
Appellee/Appellee-Cross Appellant
Insurance Commissioner of the
Department of Commerce and
Consumer Affairs

 -26-